INVESTMENT CO. OF PHILADELPHIA *v.* OHIO & N. W. RY. CO. *et al.*,
(CINCINNATI, N. R. & O. R. R. CO., Intervenor.)

*(Circuit Court, S. D. Ohio, W. D.* December 24, 1889.)

1. RAILROAD COMPANIES — TRANSPORTATION ARRANGEMENT — POWER OF RECEIVER TO TERMINATE.
    Where the receiver of a railroad company makes an arrangement for the transportation of the freight and passengers of another railroad company over the line of his road, and there is no provision making the arrangement obligatory on either party for any stated period of time, the receiver may terminate such arrangement at will, without previous notice to the other company.

2. SAME—CONVEYANCE—APPURTENANCES.
    A conveyance of a railroad from one given point to another, "including the two tracks composing what is termed the 'Y,'" does not convey the right to use a third track, used, in connection with the Y, for turning locomotives on another road, since such third track is not an appurtenance of the line conveyed.

In Equity. On intervening petition.
*T. M. Hinkle,* for petitioner.
*Ramsey, Maxwell & Ramsey* and *Howard Hollister,* for receiver.

SAGE, J. I cannot see that there is in this case any ground for a restraining order. According to the petitioner's own showing, there was nothing more than an arrangement for freight and passenger traffic, without any stipulation for its continuance. It was clearly terminable, so far as its terms indicate, at will. This is conceded, but it is insisted that, from the very nature of the arrangement, petitioner was entitled to reasonable notice. It may be that it could not be terminated so as to affect freight actually in transit, or so as to leave petitioner's cars upon the line of the defendant company's road after the third rail

was taken up.    But it appears that the receiver has offered to return all the cars so left without extra charge, and to receive from the petitioner any cars on its line which belong to other lines.    If there be any mistake about this, or if the court be in error as to the fact, the receiver will certainly be directed to do both these things.    The receiver further states in his affidavit his willingness to take from the petitioner all the cars that were loaded on November 18, 1889, provided the shipper will pay the required rate, and make arrangements for prompt unloading upon their arrival at the point of destination.    These propositions seem to the court to cover all the reasonable requirements that can be made by the petitioner.    There was no stipulation that the arrangement or any feature of it should remain in force for any definite period.    The petitioner was at liberty at any time to make other arrangements.    It was under no obligation to ship freight or passengers over the defendant company's line, and the defendant company could not, therefore, be required to continue the arrangement on its part longer than it deemed advisable.    If the receiver undertake to charge and collect more than lawful rates of freight, which he denies having heretofore done, the court will require him to conform his charges to the provisions of the statute, but it cannot require him to continue the rates which were recognized during the pendency of the arrangement above referred to.

As to the Y, the language of the deed to the petitioner's grantor, and by him to the petitioner, excludes the construction claimed for the petitioner.    The conveyance is of "a railroad, beginning at a point on the original line of the right of way, by the main line of said Cincinnati and Eastern Railway near Newtown, in Hamilton county, Ohio, at a point known as 'New Richmond Junction,' including the two tracks composing what is termed the 'Y;' thence," etc.    Now, the petitioner insists upon the right to use the three tracks which he claims compose the Y. The answer to this claim is—*First*, that it is not supported by the language of the deed, but is in direct conflict with it; *second*, that the third track—that is to say, the portion of defendant company's line which is used in connection with the Y for turning locomotives on the petitioner's road—is not an appurtenance of the road conveyed to the petitioner's grantor, nor has it ever been any part of the railroad so conveyed. The petitioner is not, therefore, entitled to any order which will secure to him the use of the portion of the defendant company's track above referred to, between the two tracks composing the petitioner's Y.    The motion for a restraining order is overruled.

---

On Monday, January 20, 1890, the petitioner by his counsel asked leave to reargue his application for a restraining order, for the reason that the ruling above was made upon a mere statement of points under a limit of time on motion day, and that included points not presented by counsel.    The court granted the leave, and, having heard counsel, announced, on the 22d of January, 1890, the following additional ruling:

SAGE, J. I have, in accordance with the request of counsel, reconsidered, upon full argument, the ruling hereinbefore made. I see no reason for changing that ruling, so far as it relates to the arrangement for freight and passenger traffic. There is not shown any stipulation for its continuance. Counsel for the petitioner insists, however, that the circumstances indicate clearly that it was to be a permanent arrangement. By the circumstances, I mean the laying of a third rail by the receiver, and the alleged fact that the petitioner, relying on the receiver's promise to continue the arrangement, expended money in the purchase of an engine, a coach, steel rails, and in the construction of switches, all for the purpose of operating its road under the arrangement. But none of these circumstances, nor all of them combined, change the fact that there was no stipulation for a continuance of the arrangement; and if the petitioner, therefore, chose to make the expenditures referred to, without insisting upon a definite stipulation, it certainly did not thereby acquire any additional right against the receiver, even in equity. Moreover, the receiver, who is merely an officer of this court, had no authority to make a permanent arrangement such as is claimed. Obviously the arrangement must be regarded as terminable at will, or upon reasonable notice, or as perpetual. There is no middle ground between these propositions, and certainly this court will not recognize a perpetual arrangement of that sort, attempted to be made by its receiver. I am still of the opinion, expressed in the former ruling, that the conditions there stated are all that the petitioner can properly claim as to the termination of the agreement.

Now, as to the Y. The description of the petitioner's road in the deed made in pursuance of the order of the court under whose decree it was sold, is as follows:

"A railroad beginning at a point on the original line of the right of way by the main line of said Cincinnati and Eastern Railway near Newtown, in Hamilton county, Ohio, at a point known as 'New Richmond Junction,' including two tracks, composing what is termed the 'Y;' thence through," etc.

Now, it is to be observed that what was sold was the superstructure, and the right of way or easement upon which it was laid. The line begins, not at the track of the Cincinnati & Eastern Railway, but upon the line of its right of way. The grant, however, includes the two tracks composing what is termed the "Y," and this language seems to me, by its proper construction, if there were nothing else, to exclude the third track; that is to say, the portion of the main track of the Cincinnati & Eastern, now the Ohio & Northwestern, which connects the two tracks composing the Y, and without which they cannot be operated. The purchaser took exactly what is described in the deed. But it is insisted that this third track is an appurtenance of the two tracks, and therefore passes as an incident of the grant. The answer is that the deed makes no reference to appurtenances, and if it did, or if we regard that as unnecessary, it was held in *Harris* v. *Elliott*, 10 Pet. 54, that the term "appurtenance" "is used to signify something appertaining to another thing as principal, and which passes as an incident to the princi-

pal thing." This is in accordance with the ruling as old as the time of Lord Coke, who says that "a thing corporeal cannot properly be appurtenant* to a thing corporeal, nor a thing incorporeal to a thing incorporeal," (1 Co. Litt. 121*b*;) and so the supreme court of the United States, in *Harris* v. *Elliott*, held that, according to this rule, land cannot be appurtenant to land, and that a mere easement may, without express words, pass as an incident to the principal object of the grant. The case of *Bank* v. *Cunningham*, 22 N. E. Rep. 924, decided November 19, 1889, by the supreme court of Ohio, reported in volume 22, No. 25, of the Weekly Law Bulletin and Ohio Law Journal, and to appear in 46 Ohio St., is not in point. There it was held that the sale of a part of the premises occupied by a building, the hall of which connected with the landing of a stairway leading from the street, and situate upon the other part of said premises, and furnishing the only means of access to the second floor of the building sold, passed to the purchaser a right to the use of the stairway as an easement appurtenant to the premises conveyed. In that case the stairway was an appurtenance, and, it was properly held, passed as an incident to the principal thing. But in this case the third rail is property of the same rank or kind as that conveyed in terms, and cannot be said to be an incident to the principal object of the grant; for, as the supreme court said in *Harris* v. *Elliott*, "it would be absurd to allow the fee of one piece of land, not mentioned in the deed, to pass as appurtenant to another distinct parcel, which is expressly granted by precise and definite boundaries." In addition to this, as was stated in the former ruling, the conveyance by its terms is expressly limited to the two arms of the Y, and, although they cannot be operated without a connecting track, there is nothing to prevent the petitioner from constructing such a track just outside the line of the right of way of the Ohio & Northwestern Company, or taking up the two arms, and removing them to another location. The former ruling is therefore affirmed.