## MEMPHIS LAND & TIMBER COMPANY *v.* ST. FRANCIS LEVEE DISTRICT.

### Opinion delivered July 3, 1897.

LEVEE TAX—BURDEN OF PROOF.—The act for the levy of taxes by the St. Francis levee district (Act February 15, 1893) provides that suits to enforce the collection of such taxes shall be conducted in accordance with the practice of chancery courts, "and this law shall be liberally construed to give to said assessment lists the effect of *bona fide* mortgages for a valuable consideration and first lien upon said lands." *Held* that, the assessment of the taxes being shown, the burden is on the party assailing to prove that they are illegal. (Page 263.)

CORPORATION—SPECIAL MEETING OF DIRECTORS.—Under the act of February 15, 1893, incorporating the St. Francis levee district, which provides that the board of directors shall meet annually in May, and authorizes the board to hold such meetings as the by-laws may authorize, and to levy annually a tax for carrying into effect the object and purposes of the act, and to "do all other acts and things not inconsistent with the laws of this state which may be proper to carry into effect the purposes and objects of the act," the board of directors was empowered to meet at any time after the act took effect and elect officers and appoint assessors to make the assessment for the year 1893. (Page 264.)

LEVEE TAX—WHEN LAND LIABLE.—The act providing that the levee tax should be assessed upon the increased value or betterment estimated to accrue from protection given against flood, the owner of land will not be relieved of taxation by reason of the fact that his lands will not be enhanced in value to him for the purpose for which he is using or intends to use it. (Page 265.)

ASSESSMENT—RULE FOR ASCERTAINING VALUE.—The assessment of property of the levee district was not rendered void by the adoption by the board of equalization of a rule that the value of each tract to be assessed would be enhanced in proportion to the depth of the inundation.    (Page 266.)

LEVEE TAX—LIABILITY OF LAND.—Proof that certain lands included in the levee district are wet from winter and spring rains from six to nine months in the year, and that certain other lands are above overflow, is not sufficient to show that such lands would not be benefited by the levee.    (Page 268.)

SAME—PRESUMPTION AS TO VALIDITY.—Where no complete record of the proceedings of the board of directors of the levee district is introduced in evidence, it will be presumed that all necessary formalities in the levy of the tax were complied with.    (Page 268.)

NOTICE OF MEETING OF LANDOWNERS—SUFFICIENCY.—A notice to the land-owners in the levee district which apprised them that they would be called on to vote and determine "whether or not an annual tax rate of two per cent. shall be levied" for the purpose of building and maintaining the levee is sufficient to apprise the voters that the levy was to be made annually, especially when taken in connection with the more explicit language of the statute (Act February 15, 1893, § 5).    (Page 269.)

LANDOWNERS' MEETING—IRREGULARITY.—A meeting of the landowners in a county to vote upon the question whether the annual tax should be levied is not void because conducted by one director instead of three, as the statute provides that no irregularity in holding such meetings shall be a valid defense against an action to collect the taxes.    (Page 269.)

LEVEE TAX—VOTING BY PROXY.—A landowner having the right to vote by proxy upon the question whether the levee tax should be levied, he may authorize a director to cast his vote for or against the tax.    (Page 270.)

SAME—WHEN REQUIREMENT OF NOTICE DIRECTORY.—The act creating the St. Francis levee district provided that "if it shall appear from the return of the election that two-thirds of the landowners represented at said meeting voted for said annual assessment, and if said board shall be satisfied that a majority of all the landowners of said district were represented at said meeting, then the said president of said board shall give notice of the fact throughout the said levee district, and the tax shall be levied." *Held* that the requirement of notice was merely directory, and not essential to the validity of the tax.    (Page 270.)

Appeal from St. Francis Circuit Court in Chancery.

H. N. HUTTON, Judge.

*John B. Jones, L. C. Balch, Morris M. Cohn* and *Norton & Prewett,* for appellants.

The statute must be strictly construed; no presumption in favor of regularity of acts of board. The burden is on appellants to show same. 59 Ark. 344, 356; 58 Ark. 375; 24 N. J. Eq. 144; 3 Wall. 320; 50 Ark. 116, 123; 6 Wend. 486; 34 Vt. 156; 45 Vt. 202; Burroughs, Taxation, 149; 51 Ark. 34, 51; 10 Fed. 891; Mechem, Pub. Off. §§ 581, 511, 522, 627; Welty, Assessments, §§ 221 and 223; 14 Gray, 440; 11 Vt. 385; Sutherland, Stat. Const. 390 and 454; Beach, Pub. Corp. §§ 1166 and 1177; Endlich, Int. Stat. §§ 345, 358, 434; Cooley, Taxation, 523, 340, 339, 283, 286 (note 1); 2 Dillon, Mun. Corp. § 769; 4 Hill, 86; 7 Cow. 88; 71 N. Y. 310; 3 Johns. Cas. 107; 2 Wash. 543; 27 Pac. 474; 8 Ark. 272; 37 Ark. 643; 50 N. Y. 502; 17 Wis. 442; 46 N. Y. 178; 69 N. Y. 75; 32 Ark. 131; Desty, Taxation, 615; Burroughs, Taxation 478; 3 Dutcher, 538; 30 S.W. 1131; 80 Tex. 195. Taxes levied are void because statute was not complied with in respect to estimates, notices of election, number of judges of election, method of casting ballots and certifying same, notice by president of result, assessment and equalization of assessments, etc. Mansf. Dig. § 5205; 51 Ark. 34, 51; Cooley, Taxation, §§ 335, 257, 258, 661, 665; 3 Den. 594; Black, Tax Titles, § 275; 37 Wis. 77; 47 Wis. 513; 40 Wis. 315; 7 Nev. 315; 75 N. C. 474; 18 N. J. Eq. 518; 9 Wend. 244; 11 Wend. 155; 35 N. J. 497; 11 La. An. 229; 11 La. An. 338; 54 Ark. 643; 55 Ark. 218; 59 Ark. 483; 34 N. E. 431; 30 Mich. 24, 31; 4 Hill, 76; 50 N. Y. 502; 30 Mich. 24; 8 Md. 352; Cooley, Taxation, 787 and 788, 324, 341, 333, 421, 419, 607; 33 Ark. 716; 29 Ark. 340; 42 Ark. 100; 32 Ark. 131; 32 Ark. 496; 37 Wis. 254; 39 Ia. 172; 48 Ark. 282 and 283; 147 U. S. 190; Desty, Taxation, 430; 11 S. W. 402; 36 N. J. Law, 170; 77 N. Y. 523; 53 Cal. 44; 4 West Coast Rep. 585; 49 N. J. L. 311; 82 Ky. 265. The judges of election cannot solicit proxies, vote them, and pass on them. Brightly, Lead. Cas. Elections, 692; 1 Kent, Comm. 295, note. Board had no power to hold meeting in 1893; act February 15, 1893. Only about one third of appellant's land was benefited by the levee.

*Cockrill & Cockrill* and *J. P. Brown*, for appellee.

The assessment list is *prima facie* evidence of the regularity of all acts required under the act. Desty, Taxation, §§ 615, 724; 65 Ala. 142; 41 N. J. L. 275; 80 Hun, 122; 60 N. W. (Ia.) 733; 50 Ark. 266; 61 Ark. 252–253; 43 Ark. 243; 30 Ark. 69; 24 Ark. 402; 70 N. Y. 476–479; 84 N. Y. 596, 508; 86 Mich. 625; 62 N. Y. 567–576; 58 Conn. 522; 37 Ark. 100; 49 Ark. 190; 33 Ark. 816; 52 Ark. 82; 49 Ark. 535, 542; 63 Ark. 636; 56 Wis. 460. The bill of exceptions does not contain all the evidence, hence the court will presume that appellee's case was fully established. 35 Ark. 230; 38 Ark. 481; 45 Ark. 310; 39 S. W. (Ark.) 555; 44 Ark. 76. The answer of defendants is in the nature of a confession and avoidance, hence the burden is on them to show illegality. 13 Neb. 22 and 23; 14 Neb. 227. Assessments must be taken as conclusive. 59 Ark. 513, 535, 536; 49 Ark. 518; Cooley, Tax. 652, 638, 661, 663, 640, 661, note1, 620, note 2; 78 Ky. 178; Desty, Taxation, 625; 21 Ark. 40; 21 Ark. 60. All presumptions are in favor of regularity of acts of board. 50 Ark. 266, 276, 277; 147 U. S. 91; 16 Wall. 334; Desty, Tax. § 510; Cooley, Tax. 342, 337; 8 Md. 352; 1 Pa. St. 224; 39 S. W. 555, 557; 29 Kas. 460; 38 Ark. 271, 274; 42 Ark. 152, 161; 20 Pick. 418; Cooley, Taxation, 665.

BATTLE, J. An act of the general assembly which became a law on the 15th of February, 1893, and the act amendatory thereof which was approved March 21, 1893, after describing certain territory known as the St. Francis basin, declared that it should constitute a levee district; and, naming certain persons directors, provided that they and their successors in office shall constitute a body politic and corporate by the name and style of the "Board of Directors St. Francis Levee District;" and empowered the board, and made it their duty, "to levee the St. Francis front in this state, and to protect and maintain the same in such effective condition as honest, able and energetic effort on their part may obtain by building, rebuilding, repairing or raising levees on the right bank of the Mississippi river, or such other places as the said board may select," and to employ all agents "necessary to the execution of their duties."

To enable the board to carry into effect the object and purpose of the acts, they were empowered, and it was made their duty, "to assess and levy annually a tax not exceeding five per cent. of the increased value or betterment estimated to accrue from protection given against floods from the Mississippi river by said levee, on all lands within said levee district. *Provided*, That said board of directors shall call a meeting of the land owners in each of the respective counties within said levee district by posting notices of the time and place of said several meetings in ten conspicuous places in each county ten days before the day fixed for the meeting, at which time the proposition to levy said annual assessment shall be submitted to said land owners, and if a majority of all the land owners in such levee district shall appear at said meeting in person or by their legal proxies, and two-thirds of these shall vote for such assessment, it shall then be the duty of said board of directors to levy said tax." The acts further provide "that if the estimated cost of construction of said levee shall exceed two per cent. of the increased value of said land in said district as assessed, the board of directors may, at their discretion, submit a proposition to the land owners of said district to assess a tax on said increased value of lands not to exceed two per cent. per annum for so many years as may be necessary to raise a fund equal to the estimated cost of said levee;" and that "if a majority of said land owners of the said district shall attend the several meetings in said districts, and two-thirds of those attending vote for said taxation, the assessment shall be made by said board, and the proceeds used for the construction of said levee."

An assessment of the increased value or betterment to accrue to the lands in the district from the protection to be afforded by the levee when built was made by assessors appointed for that purpose for the years of 1893 and 1894, and was compared and equalized by a board of equalization; and a proposition to levy a tax of two per centum per annum on the increased value of the lands in the district, according to the assessment, for the purpose of building, repairing and maintaining the levee was submitted to the land owners of the district at meetings called for that purpose, and, the requisite number voting

for the tax, according to the returns of the election, the tax of two per cent. was levied by the board of directors for the years 1893 and 1894. The Memphis Land & Timber Company and A. H. Chatfield failed to pay the assessments on their land in the district in St. Francis county, and suits were brought to foreclose the lien of the taxes upon the delinquent lands. Answers were filed by the defendants, admitting that the assessments were made, and that the taxes were levied, but averring that the same, for many reasons given, were illegal and void. The court, after hearing the evidence adduced by both parties, sustained the taxes, and ordered the lands to be sold to pay them.

The appellants contend that the circuit court erred in sustaining the taxes. This contention is partly based upon the theory that nothing is presumed in favor of the assessment or taxes, but the burden was upon the levee district to prove that everything essential to their validity was done. Assuming this theory to be correct, they contend that the taxes are illegal and void, because of an insufficiency of the evidence adduced at the hearing. But in this they are mistaken. For the act expressly provides that suits instituted to enforce the collection of the taxes levied by the board of directors "shall be conducted in the name of the St. Francis Levee District, and in accordance with the practice and proceedings of chancery courts in this state, * * * and this law shall be liberally construed to give to said assessment lists (taxes) the effect of *bona fide* mortgages for a valuable consideration and first lien upon said lands as against all persons having an interest therein." In giving the assessment lists the effect of *bona fide* mortgages, and requiring the suits to be conducted in accordance with the practice and proceedings in chancery courts, the act makes the assessment of taxes a lien upon the lands, and *prima facie* evidence of its legality and validity; for such is the effect of the mortgages referred to in the statute, and the practice in chancery as to them, when involved in suits. When the execution of the mortgage in conformity with the statute is shown, the burden is on the party assailing it to prove its invalidity. So, in suits for the collection of levee taxes, the assessment of the taxes being shown, the burden is on the party assailing to prove that

they are illegal.   *Durbin* v. *Platto,* 47 Wis. 484; *Manseau* v. *Edwards,* 53 Wis. 457; *Waterbury* v. *Schmitz,* 58 Conn. 522.

The appellants admit that the assessment of the taxes was made by the board of directors, but allege that they were illegal, for reasons specified in their respective answers.   They confess and avoid, and thereby take upon themselves the burden of establishing the illegality.   It is therefore unnecessary for us to decide any question based solely upon the failure of the levee district to adduce evidence to prove the performance of any requirement of the statute.

Appellants insist that the assessment of lands for the year 1893 was illegal.   They argue that an assessor in each county in the district was to be elected by the board to make the assessment; that the board could not organize until May 9, 1893; that the statute required the assessment to be completed by the first Tuesday in May, which was the 2d of May in 1893, and that therefore no legal assessment could have been made for that year. This argument is based upon the fact that the act creating the district did not take effect until the 15th of February, 1893, and upon the provisions thereof requiring the board of levee directors to hold a regular and annual meeting on the second Tuesday in May of each year.   But the act expressly authorizes them to hold such other meetings as their by-laws may authorize, and, taking effect from and after its passage, it makes it their duty to organize by electing a president, secretary, treasurer and chief engineer, and to elect one assessor for each county in the district, who shall make the assessment for his county, beginning the same the first Monday in April and completing it by the first Tuesday in May of each year.   And it further authorizes them to levy annually a tax for carrying into effect the object and purposes of the act, and to "do all other acts and things, not inconsistent with the laws of this state, which may be proper to carry into effect the purposes and objects of the act."   The power to meet, organize, and elect assessors at any time after the 15th of February, the time when the act took effect, and before the first Monday in April, in the year 1893, was clearly conferred upon the board by the provisions of the act.   There is no evidence that it was not done.

Appellants next insist that the assessment of the better-

ments which would accrue to the lands when the levee was completed was illegal.  How should it have been made?  In *Carson* v. *St. Francis Levee District*, 59 Ark. 536, it is said that "the lands in the district are to be assessed according to their real present value, and then according to what they will be really worth after the improvement shall have been completed, and *its beneficial effects have been realized;* and the difference between these two is to be the valuation upon which the assessment is to be made."  The difference in the market value of the lands before and after the improvement, if increased, should be the assessment.  The owner will not be relieved of taxation on account of the levee by reason of the fact that his lands will not be enhanced in value to him for the purposes he is using or intends to use them.  The fact that the use to which the property is devoted will not be increased will not relieve it because the improvement is thereby rendered valueless to the owner.  Only to the extent that such use affects the market value can it be taken into consideration by the assessor.  As has been justly remarked by a court, "when the owner has the unrestrained power of alienation, and the property may be converted to any use at his pleasure, it is difficult to see how, upon any principle, an exception can be made to the rule regarding only the market value.  After the owner has escaped what would otherwise be a great burden, on the ground that he does not intend to use the property in a· way which will make the improvement beneficial, he may change his mind, throw the property into the market, and realize advantages for which others had been made to pay."  Cooley, Taxation (2 Ed.) pp. 660-664.  .

In the assessment of betterments an assessor acts judicially.  "Valuation," says Judge Cooley, "is in its nature a judicial act, and the assessors, in making it, are entitled to the customary protection which the law accords to officers exercising corresponding judicial functions."  Value is a matter of opinion, about which competent judges may and do honestly differ.  An assessment, therefore, should not be disturbed by the courts when it is the result of the consideration by the assessor of those things which affect, enter into, fix, or govern the market value, and of an opinion based on the same.  To invoke

the intervention of a court to set aside such an assessment would be to invoke the judicial authority to give its judgment controlling effect when the law intends that that of the assessor should prevail. When, however, the assessment is colorable or arbitrary, made without regard to those things which regulate value, the courts having jurisdiction may set it aside. Cooley, Taxation, pp. 409, 410, 660–664.

In this case the assessors of the district were required to make their respective assessments, beginning the first Monday in April, and completing the same by the first Tuesday in May, to report to the secretary of the levee board, to hold a meeting and organize as a board of equalization on the second Monday in May, and, when so organized, to "compare and equalize their assessments and correct their books to conform to said equalization;" the statute declaring that "their assessments as equalized shall be the assessment of said levee district for that year until the next assessment." How they made their assessments the evidence does not disclose; but they met as a board, compared, and, taking the last assessment for state and county taxation as a basis, equalized the assessment of betterments as follows: Of lands valued for state and county taxation at 50 cents an acre, at 400 per cent. on such valuation, that is to say, $2 an acre; of lands valued at $1 per acre, at 200 per cent. thereon; of lands valued at $2 per acre, at 100 per cent. thereon; of lands valued at $5 per acre, at 40 per cent. thereon; and of lands valued at $10 per acre at 20 per cent. thereon. W. H. Newsome, the president of the board of equalization, testified as to how this was done, as follows: "We took the assessed value of the lands as they appeared on the tax books for state and county taxes, without reference to betterments. Then, as a betterment, we added from five to four hundred per cent., in proportion to depth of overflow. We concluded that the land subject to the deepest overflow would derive the greatest benefit by a levee. We did not take into consideration improvements or cleared lands. The betterments would only be upon the lands, and not upon the improvements. It amounted to exactly $2 per acre. * * * We agreed that lands that were nearly or quite valueless received the greatest betterment. We did

this from the depth of overflow, and we got the depth by the value for state and county purposes."

Upon this testimony of Newsome, appellants insist that the assessment of the betterments which would accrue from the levee on the lands in the district was arbitrary and illegal. But this contention is not true. He was testifying as to the action of the board, and not as to the separate action of each assessor. The board was not required to examine each tract of land. The assessors who composed it were to meet as such board, after their respective assessments were completed, for the purpose of imparting information on the subject of their consideration to each other, and to compare views, and with this aid equalize their assessments. Each assessor, having made the assessment for his county, presumably knew the approximate location of each tract of land assessed by him, its value, whether it was in a locality subject to overflow, the effect of the overflow upon the value of the land with respect to its depth, and the manner in which lands in his county subject to overflow were assessed for state and county taxation. Having an assessment to make which depended upon, or would be aided by, such information, it would be natural and necessary for him to acquire it for the purpose of enabling him to discharge his duties. With this information, he could determine from the assessment books, with a reasonable approximation to accuracy, the effect of previous overflows upon the valuation of lands in his own county. With this information, presumably furnished by each assessor, the board agreed, and determined that the value of each tract had been affected by overflows in proportion to their depths over the same before receding, and by being protected against overflows would be enhanced in value in the same proportion; and that which was not subject to inundation was the least injured, and would be the least benefited by a levee, according to its value. Having come to this determination, they formulated a rule by which the value of the betterments from the levee could be assessed, as near as may be, and equalized their assessments accordingly. By the method adopted, they determined what the difference between the land before and after the completion of the levee would be, and thereby assessed the value of the betterment according to the rule we have stated.

But it is said that the board did not take into consideration improvements or cleared land. The reason for so doing assigned by the witness is, "the betterments would only be upon the land, and not upon the improvements." There is no evidence to the contrary, and we do not judicially know that the testimony of the witness is untrue.

Have appellants shown that the board acted under a misapprehension of facts? If so, they should have shown it upon the hearing of their action. Witnesses testified that certain lands in the levee district would not be benefited by the levee, for the reason that they are wet from winter and spring rains from six to nine months in the year, and that certain other lands would not be benefited because they are above overflow. This evidence does not show that the market value of these lands would not be increased by a levee sufficient to protect them from an overflow of water from the Mississippi river. For aught that is shown by such testimony, the lands subject to inundation by rains, in the event such a levee shall be built, may become valuable by reason of the owner being enabled to reclaim them by means of drainage; and the lands above overflow would be increased in value by reason of changes made in their surroundings. As said in, *Carson* v. *St. Francis Levee District, supra*, "A tract within the district may be above overflow without the levee, and yet, in various ways, greatly benefited by the levee."

The assessment of the betterments should not be disturbed in this case.

Appellants contend that the taxes levied were illegal because no estimate of the cost of constructing the levee was made before the proposition to levy the two per cent. per annum tax was submitted to the land owners for approval. If it be conceded that the estimate was essential to the validity of the taxes, there is no evidence that it was not made before the proposition was submitted. It is true that certain parts of the record of the board were read as evidence, but they do not purport to be the complete record of the proceedings of any meeting of the board, or show that it was not made. There was no evidence of the contents of the record not read, or that it did not show that the estimate was not made in due time.

The evidence shows that there were at least sixty-six pages which were not read, and there is no proof of what they did or did not contain.

The notice of the meetings of the land owners called to vote upon the proposition which was submitted by the board is objected to. The evidence shows that the notice posted in some of the counties in the district was partly in the following form: "To persons owning lands within that part of the St. Francis Levee District lying within the limits of the ——————— county. All owners of lands within the above described limits, ——————— county, are hereby called to meet at ———————, in said county, on Saturday, the 10th day of June, 1893, at ten o'clock a. m., at which time and place, as provided by the laws of the state of Arkansas, there will be voted on and determined, whether or not an *annual tax rate of two per cent.* shall be levied and assessed on the betterments or increased valuations of said lands, by said land owners, for the purpose of building, repairing and maintaining the levees provided for in the act of the general assembly of the state of Arkansas, which became a law on the 15th day of February, 1893," etc. The objectionable part is the description of the tax to be voted upon, and the question raised by the objection is, was the description sufficient to show that it was to be levied annually if approved? The notice says it was to be an annual tax. To be annual, it must be levied annually. A tax to be levied only for one year would not be such a tax. Moreover, the land owners, in connection with this notice, were bound to take notice of the law under which they were called to vote. With this knowledge, the notice was sufficient to give them to understand that they were called upon to vote whether a tax of two per cent. per annum shall be levied on the betterments which shall accrue upon the lands in the district from the levee, when completed, "for so many years as may be necessary to raise a fund equal to the estimated cost of said levee."

The act provides for the appointment of three land owners in each county in the district, directors and members of the board, and that they shall hold the meetings in that county. The evidence shows that only one director of each of two counties assisted in holding the meeting or election therein. Appel-

lants insist that this rendered the election illegal and void. But the act provides that no informality or irregularity in holding the meetings shall be a valid defense against an action to collect the taxes. Here the election was held by authority, and the land owners voted and approved the tax. The object to be gained by submitting the proposition to levy the tax to the land owners—their approval—was accomplished, and the failure of one or two of the directors to assist in holding the meeting or election in their respective counties was an irregularity which the act provides shall not defeat the collection of the taxes.

The evidence shows that some of the directors were authorized by land owners to cast their votes at the election, and that they did so. Appellants concede the right of the land owner to vote by proxy, but insist that it rendered the election unfair and illegal for the directors to cast his vote. The act, however, does not prohibit the appointment of any class of persons proxies; and we cannot see how the casting of a vote by a director as a proxy can affect an election under the law, when he is authorized, and directed how, to do so, and casts the vote as he was directed. His action in that manner would be equivalent to receiving the vote of the land owner, in his absence, from the hands of another, and would have the same effect, and no other.

The act provides that "if it shall appear from the return of the election that two-thirds of the land owners represented at said meeting voted for said annual assessment, and if said board shall be satisfied that a majority of all the land owners of said district were represented at said meeting, then the said president of said board shall give notice of the fact throughout the said levee district, and the tax shall be levied." Appellants insist that this notice was not legally given. According to the manner in which they contend it should have been given, the evidence tends to show that it was not. But, conceding that it was not, could the failure affect the tax? It was not required for the purpose of giving the land owners an opportunity to contest the election, for no such contest is provided for by the act, outside of a suit for the collection of the tax; nor was it required for the purpose of giving them an opportunity to pay

the tax, for the tax need not be levied until after the notice, and it would have been required to be given after that time, if such was its purpose, and the president is not such an officer upon whom such duties are usually imposed. It was not required for the purpose of informing the board that they might levy the tax, for it was not made a condition upon which it could be levied, and they presumably had the information imparted by the notice before it was given. Construing the act liberally, as it provides, for the purpose of giving to the assessment of the tax the effect of a *bona fide* mortgage for a valuable consideration, the requirement was directory, and not essential to the validity of the tax. This follows as a necessary consequence of the fact that it was not intended for the protection of the land owner, district, or any one interested, or as a condition to any material act in the tax proceeding.

The decree of the circuit court is affirmed.