GRIFFITH v. AYER-LORD TIE COMPANY.

Opinion delivered July 7, 1913.

1. CONVERSION—COMPLAINT—SUFFICIENCY.—A complaint in an action for damages for conversion, which alleges that plaintiff bought the timber on certain lands for one L., retaining a lien on the timber, L. being required to sell all of the same to plaintiff, and that L. sold the said timber to defendant, and that defendant converted it to his own use, is sufficient to state a cause of action against defendant for conversion. (Page 229.)

2. DEEDS—TIMBER DEEDS.—Where a deed to plaintiff conveying timber shows on its face that the timber was "sold and conveyed" to plaintiff, the instrument will be held to be a deed, and not a mortgage. (Page 230.)

3. DEEDS—TIMBER DEEDS—REQUISITES.—Timber, until severed from the soil, is real estate, and in order to convey the legal title thereto it is absolutely necessary that somewhere in the instrument there should be words expressing the fact of a sale or transfer of the title; that is the words "grant, bargain and sell," or words of similar purport. (Kirby's Digest, § 731. (Page 230.)

4. TIMBER—TIMBER DEEDS—MODE OF TRANSFER—RECITALS—SURPLUSAGE. —The transfer of growing timber must be by deed, and where plaintiff purchased timber, and the deed to plaintiff contained apt language to convey the title to plaintiff, a recital in the deed that one L. was the absolute owner of the timber is surplusage. (Page 230.)

5. CONVERSION—INNOCENT PURCHASER—DAMAGES—INCREASE IN VALUE.— Where one L. wrongfully cut timber and removed it from plaintiff's land and sold it to defendant, although defendant purchased the same innocently, he is liable to the owners for the value of the timber and 6 per cent interest from the date of the conversion, and when the same is made into crossties by L., defendant is not entitled to a deduction on account of the increase in value because of the work and labor of L. (Page 230.)

Appeal from White Circuit Court; *Eugene Lankford,* Judge; affirmed.

STATEMENT BY THE COURT.

On the 8th day of May, 1906, L. P. Coleman, who was the owner of a certain tract of timber land in White County, together with his wife, executed the following instrument:

"Timber Deed.

"Know All Men by These Presents:

"That the undersigned, L. P. Coleman, of the county of Pulaski, in the State of Arkansas, by the written direction of J. S. Leffler, found on the reverse side hereof and signed by J. S. Leffler, and in consideration of the sum of fifteen hundred ($1,500) dollars to me paid by Ayer-Lord Tie Company, a corporation of the city of Chicago in the State of Illinois, the receipt and payment whereof are hereby acknowledged have sold and conveyed and by these presents do sell and convey unto the said Ayer-Lord Tie Company, as per directions and agreement on the reverse side hereof, all of the white oak timber of every character, species and kind suitable for railroad purposes, standing or being on the following described lands, situated in the county of Desha in the State of Arkansas, towit: Eight hundred acres of timber lying on Oak Log Bayou, described as follows: All of section 17, township 9 south, range 3 west, east half of east half, section 18, township 9 south, range 3 west. This deed conveys only the white oak timber and its species, and no other.

"Together with the free and unobstructed right to said Ayer-Lord Tie Company, its agents, servants and employees, and its successors and assigns, at any and all times from the date hereof until the eighth (8th) day of May, 1908, to go to and from, on and over, said lands, and other lands of grantor necessary, for the purpose of cutting, working and removing said timber on and from said lands; and on and after said last mentioned day, the right of the said Ayer-Lord Tie Company, its agents, servants and employees and its successors and assigns, to go and be upon said lands shall cease and determine, except as to any and all timber that has been cut down, then

remaining on said land; and as to such timber and any ties made and then being on said land said company is to have the further period of one year in which to remove same and no longer, unless by further agreement the time is again extended, all of which is granted for the consideration herein expressed. All tops, laps, slabs and juggles remaining thereon when the Ayer-Lord Tie Company's full time herein and thereunder has expired are to be and remain the property of the grantor. No further identification than that given shall be necessary to give to the timber herein the character of personal property.

"To make the conveyance effective, the undersigned declare and guarantee that there is no encumbrance or claim of any kind whatever upon or against said lands 'or timber that will interfere with the right of the Ayer-Lord Tie Company, its agents, servants and employees, to cut and remove said timber from said lands as hereinbefore provided, and further warrant and agree to defend the title to said land and timber against any and all adverse claimants.

And I, Nettie B. Coleman, wife of the said L. P. Coleman, for and in consideration of said sum of money, do hereby release and relinquish unto said Ayer-Lord Tie Company all my rights to dower in and to said timber.

"In testimony whereof, we have hereunto set our hands and seals this 8th day of May, 1906.
"Witness: G. D. Henderson,
"Witness: E. B. Kinsworthy.

                    "L. P. Coleman. (Seal)
                    "Nettie B. Coleman. (Seal.)"

On the back thereof is the following:

"State of Arkansas, County of.................., town of.................., this.............. day of .................., L. P. Coleman, Esq.

"Having this day and date purchased from you the within described timber, and now being the owner thereof, I direct you to execute unto the Ayer-Lord Tie

Company a bill of sale therefor, my agreement with it concerning same being found herein.

"The within bill of sale from L. P. Coleman to Ayer-Lord Tie Company was procured at my instance and for my benefit.

"Said Ayer-Lord Tie Company having paid $1,500, the consideration named, said bill of sale is made in their name to create a lien to secure them for said advancement of the purchase price and sums advanced from time to time to pay for making and hauling, or any sums standing against me.

"In consideration of the above payment and the advancement by said company, it is especially understood and agreed that I assume all loss and litigation, from the working of said timber, being the absolute owner thereof, subject to the lien created in the company's favor by the execution of the within bill of sale.

"And the said Ayer-Lord Tie Company shall have the right at any time the work is not progressing satisfactorily to it, to take charge of and work the timber for my account. In consideration of the advancements by said company herein named, ........ agree to work all of said timber embraced in this bill of sale into railroad crossties to the full satisfaction of the Ayer-Lord Tie Company, the opinion of the company's superintendent to be final thereon; and further agree to sell no ties or timber from the within described timber to any one except the Ayer-Lord Tie Company, without written consent signed by the president and manager of said company; but agree to deliver all of said ties to said company as per contract made with it on the.............. day of.................

"Witness our hands and seals this the 19th day of May, 1906.

(Signed) "J. S. Leffler.

"We agree to release said lien when above conditions have been complied with.

"Ayer-Lord Tie Company."

The instrument was duly acknowledged by Coleman and his wife on the 8th of May, 1906, and was recorded on the 22d day of May, 1906.

This suit was instituted by appellee against the appellant in the White Chancery Court. The complaint, after alleging that appellant was duly incorporated and authorized to do business in Arkansas, averred that it was engaged in the general tie business in Arkansas; that on the 6th day of May, 1906, it purchased all of the white oak timber and its species suitable for railroad purposes on a certain tract of land, describing it, from L. P. Coleman and his wife, for which it paid the sum of $1,500. It alleged that its purchase was made under a deed (which has already been set out), and that the plaintiff had a lien upon all the timber for the purchase price thereof, and for all sums advanced from time to time to pay for the making and hauling of ties, or any sums standing at any time against J. S. Leffler, the party for whose account the timber was purchased. That by reason of this timber deed, the plaintiff became the owner of said timber, it being a lienor and having a lien upon the said timber until all the purchase price and all advances which plaintiff made to J. S. Leffler were fully paid. That during the months of January, February, March and April, 1908, before plaintiff's time expired in which to cut and remove said timber from said land, and before J. S. Leffler had paid the plaintiff the purchase price of the timber and advances made to him by the plaintiff, Leffler sold the timber to W. E. Wofford, who cut the timber, or a portion of the same, and manufactured the same into crossties without the written consent of the plaintiff.

That the ties were sold to Geo. C. Griffith, the defendant; that the crossties so wrongfully appropriated by the defendant were worth $460.39. That at the time the crossties were converted by defendant to his own use, and ever since that time, Leffler was largely indebted to the plaintiff for the purchase money of said timber, crossties and advances made to him by the plaintiff.

That the defendant and Leffler and W. E. Wofford had no right or authority to take the plaintiff's property and appropriate the same to their own use without paying the plaintiff for the same. That the defendants, without the knowledge or consent of the plaintiff, took said railroad crossties which came from the land to the number of 1398, of the value of $460.39, and appropriated the same to their own use, to the damage of the plaintiff in that sum.

The prayer was for judgment against the defendants "in the sum of $460.39, the value of said railroad crossties, which crossties were covered by the lien of the plaintiff at the time the defendants wrongfully appropriated said crossties to their own use, and for costs, and for all other orders and decrees to which it is in equity entitled."

The defendant filed his answer, motion to transfer to the circuit court, and his demurrer. The motion to transfer to the circuit court was sustained, and at the July term of the circuit court, the demurrer was overruled.

The answer contained a denial of all of the allegations of the complaint.

The testimony in the case tended to prove that the defendant bought the crossties in controversy from those who had obtained same from Leffler, and that he was an innocent purchaser thereof, not knowing that the plaintiff, Ayer-Lord Tie Company, had any interest therein.

The testimony on behalf of the plaintiff tended to prove that Leffler had not paid the amount of the purchase price of the timber, and that in addition to this he was largely indebted to the plaintiff for money advanced to him to pay for the making and hauling of the ties.

The case was presented to the jury on the theory that Leffler and Wofford were not the owners of the crossties, and that they were trespassers in removing and selling the same to the defendant; and the court refused to present appellant's theory that, under the in-

strument exhibited with the complaint, and in evidence before the jury, Leffler was the owner of the timber, and that the defendant was an innocent purchaser thereof.

There was a verdict in favor of the plaintiff for $415.51, and from a judgment rendered in its favor for that sum this appeal has been duly prosecuted.

*S. Brundidge,* for appellant.

*Thomas & Lee,* for appellee.

WOOD, J., (after stating the facts). The rights of the respective parties to this controversy can only be determined by the construction of the instrument designated as a "timber deed" and set out in the statement, under which the appellee claims that it was the owner of the crossties, and that same had been sold and wrongfully converted by Leffler.

The appellant denied the title of the appellee to the ties in controversy, and contended that he was an innocent purchaser thereof for value. A proper construction of the instrument will determine all the questions in controversy.

The complaint, while loosely drawn, was not fatally defective on demurrer, and was sufficient to state a cause of action as for conversion of the crossties, for the value of which appellee sued. The defects in it should have been reached by a motion to make more definite and certain rather than by demurrer.

The correctness of the judgment turns upon the question of whether or not the instrument in evidence was a deed to appellee, creating an absolute title in it to the crossties in controversy, or whether or not it was intended as a deed to Leffler with a mortgage back to appellee creating a lien in its favor for the purchase money advanced to pay for the timber, and also the amounts advanced to Leffler to pay for the manufacturing of the same into crossties.

Construing the whole instrument, we are of the opinion that it was a deed conveying the absolute title to the timber in controversy to the appellee. The words by which the title is conveyed are in the face of the deed,

and they show that the grantor had "sold and conveyed unto said Ayer-Lord Tie Company all of the white oak timber," etc. These words undoubtedly conveyed the legal title. There are no words in the instrument anywhere conveying the timber to Leffler. The words endorsed on the back of it, to the effect that Leffler "was the absolute owner," are not words of conveyance, and these words have no effect whatever to place the title in him. The timber, until the same was severed from the soil, was real estate, and, in order to convey to Leffler the legal title thereto, it was absolutely necessary that somewhere in the instrument there should be words expressing the fact of a sale or transfer of the title to him; that is, the words "grant, bargain and sell," or words of the same purport. Kirby's Digest, § 731.

The transfer of the timber growing on the land must be by deed. Any other attempted mode of transfer would be within the statute of fraud and void.

The words on the face of the deed, "by the written direction of J. S. Leffler," and "as per directions and agreement on the reverse side hereof," are surplusage and could not operate under the statute to make the other words of conveyance applicable to a transfer of title to Leffler.

The language, also, "Having this day and date purchased from you the within described timber, and now being the owner thereof," could not operate under the statute to convey to Leffler the title to the timber.

So as between the parties to this suit, the appellant and the appellee, the instrument under consideration must be held to be a deed conveying the absolute title to the timber to the appellee. It follows, therefore, that the court was correct in instructing the jury that if Leffler cut and removed the ties from the land in controversy, without the consent of the plaintiff, that Leffler and Wofford would be wrongdoers and trespassers; and, although the defendant, appellant here, innocently purchased said crossties from such trespassers, he would still be liable to the owners for their value, with 6 per cent interest

from the date of the conversion, without deduction on account of the increase in value by the work and labor of such trespassers or wrongdoers.

The court did not err in telling the jury, as a matter of law, that appellee was the owner of the ties, for that was the proper construction to give the deed under which appellee claimed title. According to the construction given the instrument under consideration, it follows that there was no error in any of the rulings of the court in refusing and giving of instructions. The case was one to be tried in a law court, and the record is free from any error prejudicial to appellant. The judgment is therefore affirmed.