LEWIS v. DELINQUENT LANDS.

Opinion delivered December 1, 1930.

*Chas. A. Walls* and *Rose, Hemingway, Cantrell & Loughbrough,* for appellant.

*Ingram & Moher,* for appellee.

BUTLER, J. Suit was brought in the Arkansas Chancery Court, Northern District, by the receivers of Farelly

Lake Levee District of Jefferson and Arkansas counties for the purpose of enforcing the collection of taxes delinquent on the lands in said district for the years 1928 and 1929, in which suit the Felger Timber Company, Inc., intervened alleging that it was the owner of the standing timber on certain lands described amounting to 4,300 acres, but was not the owner of the fee; that the timber had been separately assessed for taxation, is being taxed as personal property, was not liable for levee taxes sought to be collected, and prayed that the plaintiffs be restrained from collecting taxes upon the timber.

The case was heard upon the pleadings, record evidence and the testimony of witnesses. The trial court rendered judgment sustaining the prayer of the intervener and enjoining plaintiffs from further proceeding against the timber on the lands described in the intervention. From that judgment is this appeal.

1. Previous to the creation of the levee district and the erection by it of its levees, these lands were subject to recurrent inundation from the waters of the Bayou Meto and the Arkansas River, so that the lands had little value. It was difficult to remove timber therefrom because of the frequency of the overflows, the lands remaining soft and boggy for a considerable period of time after the subsidance of the waters. Since the completion of the levees, the lands when put in cultivation, have become very valuable for agricultural purposes—as valuable as any within the levee district. The lands are covered with a good growth of merchantable timber, principally oak and hickory with some cypress and ash. At the time the evidence was taken in this case this timber was estimated to be worth $20 per acre. The evidence was to the effect that the levee district had been formed for the primary purpose of eliminating the overflows so as to render the lands fit for agricultural purposes, the ultimate purpose being to convert them into farms. The estimated benefits were placed at $28 per acre, the assessments amounting annually to about $1.25 per acre.

2. With reference to the relation of the intervener, the facts are that the levee district was extended to include the Felger lands in 1917, which lands at that time had been owned by the Felger family for a number of years. The title was in Bertha S. Felger in May, 1928, when, for a nominal consideration, she conveyed the timber thereon of every character and description including its growth for a period of fifty years, in which time it might be removed, to Earl H. Felger, as trustee, giving to the grantee the right to erect thereon houses, railroads, and all other improvements deemed necessary, stipulating that such improvements should be personalty with the right of removal within a reasonable time after the expiration of the time given for the cutting of the timber. Earl H. Felger was the son of Bertha S. Felger. On or before the execution of the timber deed a corporation was organized under the laws of the State of Delaware, the capital stock of which was owned by the Felger family except ten shares owned by four other persons, the said Earl H. Felger being the president and Bertha S. Felger the secretary of such corporation. Contemporaneous with the execution of the timber deed aforesaid to Earl H. Felger, as trustee, he conveyed the timber on the same lands for a nominal consideration to the corporation, intervener in this action, the terms of the conveyances being identical.

Mrs. Felger had been the owner of the lands from before the formation of the levee district, and, as this suit was brought only for the delinquent assessments for the years 1928 and 1929, we infer she had regularly paid all the yearly assessments on the benefits assessed against her lands and until the improvement was completed and her lands freed from overflow. Then, for a nominal consideration, she conveyed, not, as is customary, certain species of trees or such as was merchantable, or for a time limit reasonably necessary within which the timber might be removed, as in the case of *Dover Lumber Co.* v. *Board, etc.,* 173 N. C. 117, 91 S. E. 714, cited by appellee, but the conveyance was for all the standing timber

of every kind and character regardless of its size "with the growth of said timber" for and during a period of fifty years in which time the grantee might remove the timber. That grantee is a corporation whose entire property consists of the timber here involved and whose corporate stock, except a nominal number of no par value shares, is owned by the Felger family. The president of this corporation is Mrs. Felger's son and its secretary herself.

So long as the timber remains uncut, the soil can have no value except that of the growth of the standing timber. As this is the case, and if, as contended by the appellee, the timber could not be subjected to any part of the payment of the annual assessments of benefits, then, as stated by the appellant, "no human being would be foolish enough to pay State, county and school taxes and also the levee assessment and get nothing in return for a period of fifty years." Since it is not likely that any one would pay the taxes, the necessary result to the other landowners in the district would be an additional burden placed upon their lands and an increase in the amount of their assessments.

3. The appellee relies in this case on the force of act No. 146 of the Acts of 1905 which provides that "hereafter all timber in this State which has been sold separately and apart from the land on which it stands shall be classed as personal property and shall be subject to taxation as such," and insists that, since it has paid the general taxes assessed against the timber as personal property, it is not subject to taxation for local benefits, as only such benefits can be assessed against lands in the territory affected, and that, when the act creating the levee district used the word "land," it meant the taxable real estate in the district as defined by the revenue law and as the same appears on the tax books.

A number of decisions of this court are cited by the appellee in support of this contention which we have examined and considered. Typical of these cases is that of *St. L. S. W. Ry. Co.* v. *Levee District,* 81 Ark. 562, 99

S. W. 843, a review of which will be sufficient to illustrate the character of the cases relied upon. That was a case where the roadbed and right-of-way of the railway was included in the assessment of benefits for the construction of a levee. Among other things, it is there contended that the assessment of the railroad tracks was invalid because it included the ties, angle bars and rails which were claimed to be personal property and as such exempt from taxation for local improvements. The court held these were a part of the roadbed and, for purposes of taxation, by virtue of our statute, was real estate. In *Ft. Smith L. & T. R. Co.* v. *McDonough,* 119 Ark. 258, 177 S. W. 926-7, the court said: "It must readily be conceded, and it is conceded by appellee, that taxation for local improvement must be confined to real estate to be benefited by the proposed improvement. Personal property is not subject to taxation for the purpose, nor was it attempted in the enactment of the statute under consideration to tax personalty. The statute expressly provides that real estate only shall be assessed, but in effect declares that railroads, tramroads, etc., shall be deemed to be real estate within the meaning of the statute. It is doubtless within the power of the Legislature to classify property of doubtful character as real estate for the purpose of making it subject to assessment for local improvements. The statutes of this State provide that the tracks and right-of-way of railroads shall be real estate for the purpose of taxation and we have held that that classification makes property of that kind subject to special taxation for local improvement." In that case the court held that a street railway was not real estate.

Appellee also relies on the case of *Anderson Tully Co.* v. *Gillett Lumber Co.,* 143 Ark. at page 101, 222 S. W. 362, where, referring to the act of 1905, *supra,* the court said: "The act is intended to make timber sold separately and apart from the land on which it stands personalty for the purposes of taxation, so that the land and the timber may be separately assessed and the owner of the land be not required to pay the taxes on the timber,

which would otherwise be charged to him as a part of the land." This doctrine was recognized in the case of *Southern Lumber Co.* v. *Arkansas Lumber Co.*, 176 Ark. 912, 4 S. W. (2d) 928, but in that case the declaration is made that: "It is well settled in this State that growing trees may be severed from the land itself, and that the severance is accomplished by a conveyance of the timber, or by a conveyance of the land with a reservation or exception as to the timber. The ownership of the growing trees, after severance, is to all intents and purposes the same as the ownership of the land, and this ownership is attended with all the attributes peculiar thereto. In recognition of this rule, the Legislature of 1905 passed an act for the assessment of timber which had been sold separate and apart from the land on which it stands."

From the act and the decisions cited relating to and construing it, appellee reasons that the character of the standing timber on the lands in question is fixed as personal property, and therefore is not subject to taxes for local improvements. The cases do not support the contention of the appellee. It is settled law and common knowledge that by the term "land" is meant everything that lies below the surface or is attached thereto by the processes of nature or of art and that standing timber is as much a part of the land as the soil constituting the surface, and it was in that sense the term was used in the act creating appellant district. Therefore, the benefit accruing to the landowner estimated at $28 per acre was the increased value of the land in its entirety and not to any particular interest therein, and the special assessment finds justification in the peculiar betterments to the property as a whole created by the building of the levee. *Ahren* v. *Board of Imp. Dist.*, 69 Ark. 68, 61 S. W. 575; *Kirst* v. *St. Imp. Dist.*, 86 Ark. 1, 109 S. W. 526; *Gould* v. *Sanford*, 155 Ark. 304, 244 S. W. 433. If the land is chiefly valuable for agricultural purposes, as claimed by the appellee, and the levees designed for the purpose of increasing that value, the fact that it is being

used for some other purpose cannot relieve it from the assessments of benefits for the improvement made.

"The owner will not be relieved of taxation on account of the levee by reason of the fact that his lands will not be. enhanced in value to him for the purposes he is using or intends to use them. The fact that the use to which the property is devoted will not be increased will not relieve it because the improvement is thereby rendered valueless to the owner. Only to the extent that such use affects the market value can it be taken into consideration by the assessor. As has been justly remarked by a court, 'when the owner has the unrestrained power of alienation, and the property may be converted to any use at his pleasure, it is difficult to see how, upon any principle, an exception can be made to the rule regarding only the market value. After the owner has escaped what would otherwise be a great burden, on the ground that he does not intend to use the property in a way which will make the improvement beneficial, he may change his mind, throw the property into the market, and realize advantages for which others had been made to pay.'" *Memphis L. & T. Co.* v. *St. Francis Levee Dist.,* 64 Ark. 258, at page 265, 42 S. W. 763, 765.

Although in this case the land is devoted to the growth of timber instead of cotton and corn and other agricultural products, the burden of the local benefit remains, and the act of the owner by her conveyance of the timber in dividing the entire estate in the land into two estates, one consisting of the soil and the other of the timber standing thereon, does not change the character of the estate or relieve it of its burden. For, as is said in *Southern Lumber Co.* v. *Arkansas Lbr. Co.,* 176 Ark. 912, 4 S. W. (2d) 928: "The ownership of growing trees after severance" (constructive severance by deed) "is to all intents and purposes the same as the ownership of land, and this ownership is attended with all the attributes peculiar thereto." And, in the case of *Anderson Tully Co.* v. *Gillett Lumber Co.,* 143 Ark. 97, 222 S. W. 363, where act No. 146 of the Acts of 1905 was invoked to

defeat an action for specific performance of a contract to convey certain timber on the ground that the timber sold apart from the land on which it stands becomes personalty, that contention was denied, the court saying: "In a number of cases prior to the passage of this act we recognized timber as a part of the realty and held that a conveyance of it as such conveyed an interest in the land itself; and we think there was no legislative intent to overturn those decisions. And in a number of cases since that act we have reiterated the doctrine that a conveyance of the timber on a certain tract of land is a conveyance of an interest in the land itself, and that the timber is real estate until it is severed from the soil." In support of the principle there announced, the court cited *Griffith v. Ayer-Lord Tie Co.*, 109 Ark. 223, 159 S. W. 218; *Graysonia-Nashville Lbr. Co. v. Saline Development Co.*, 118 Ark. 192, 176 S. W. 129. Continuing, the court said: "The act is intended to make timber sold separately and apart from the land on which it stands personalty for the purposes of taxation, so that the land and the timber may be separately assessed and the owner of the land be not required to pay the taxes on the timber, which would otherwise be charged to him as a part of the land."

It is immaterial under the act of 1905 whether the timber owned separately from the ownership of the soil was to be assessed as personal property or otherwise, since the act provided that it should be assessed in the county in which the lands were situated. But, as the standing timber was not "property of a doubtful character," the classification was arbitrary and unscientific, which the Legislature subsequently recognized by act 221 of the Acts of 1929, amending § 9856 of the Digest, where provision is made that where the timber rights in any lands shall, by conveyance or otherwise, be held by one or more persons and the fee simple title in the lands held by one or more persons the timber rights in the land shall be assessed separately from "the general property therein"; that a sale of the one for delinquent taxes should not affect the title of the other, and that when

any timber rights should be forfeited for the non-payment of taxes it should be "certified to and redeemed in the same manner as is now provided for the certification and redemption of real estate upon which taxes duly assessed have not been paid." This act recognized the force of our decisions, and it would seem that now standing timber remains, when constructively severed, even for purposes of general taxation, a part of the realty. But, assuming the classification made by the act of 1905 still in being, under repeated decisions of this court this would not refer to taxes for local benefits. It seems to be the general rule that where the terms "taxes" or "taxation" are used in our Constitution or statutes, they are construed to have reference to taxation for general purposes, and not to local assessments where the fund raised is expended for the improvement of the property taxed.

In *City of Bridgeport* v. *N. Y., etc. Ry. Co.*, 36 Conn. 263, quoted with approval in the case of *Paving Dist., etc.* v. *Sisters of Mercy*, 86 Ark. 109, 109 S. W. 1165, quoting from page 113, the court said: "An assessment of benefits for local improvements has never been regarded as a tax, or termed such in legislative proceedings, in our public or private laws, or in popular intercourse."

"Assessment upon real estate for local improvements has no connection whatever with the general taxing powers mentioned, and this is so well settled as really to require no citation of authorities, much less argument." *Carson* v. *St. Francis Levee Dist.*, 59 Ark. 513, 27 S. W. 590, at page 531.

In Cooley on Taxation, p. 416, ch. 20, § 1, this question is thus discussed by the author: "Special assessments are a peculiar species of taxation, standing apart from the general burdens imposed for State and municipal purposes, and governed by principles that do not apply generally. The general levy of taxes is understood to exact contributions in return for the general benefits of government, and it promises nothing to the persons taxed beyond what may be anticipated from an administration of the laws for individual protection and

the general public good. Special assessments, on the other hand, are made upon the assumption that a portion of the community is to be specially and peculiarly benefitted, in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds; and, in addition to the general levy, they demand that special contributions, in consideration of the special benefit, shall be made by the persons receiving it. The justice of demanding the special contribution is supposed to be evident in the fact that the persons who are to make it, while they are made to bear the cost of a public work, are at the same time to suffer no pecuniary loss thereby, their property being increased in value by the expenditure to an amount at least equal to the sum they are required to pay." And in *Illinois Central Rd.* v. *Decatur,* 147 U. S. 190, 13 S. Ct. 293, the court, referring to the principle stated by Mr. Cooley, *supra,* said: "These distinctions have been recognized and stated by the courts of almost every State in the Union, and a collection of the cases may be found in any of the leading text books on taxation. Founded on this distinction is a rule of very general acceptance—that an exemption from taxation is to be taken as an exemption simply from the burden of ordinary taxes, taxes proper, and does not relieve from the obligation to pay special assessments."

The rule announced in these cases seems to settle the instant case contrary to the contention of the appellee. He relies, however, on the case of *Dover Lumber Co.* v. *Bd. of Com'rs, etc.,* 173 N. C. 117, 91 S. E. 714, where the court used the following language: "When standing timber is severed by conveyance from the land, with the right to cut and remove within a given period all timber of a certain size, it is no longer a part of the land. The owner of the timber is not a freeholder or landowner from the mere fact of owning a timber lease. It is true we have held that timber is to be considered as land for purposes of conveyancing, but it does not follow the land after it has been so conveyed, and is no longer a part and

parcel of it.'' The authority of this case is weakened by the dissenting opinion of Mr. Chief Justice CLARK, who dissented from the statement made, which he contends is merely *obiter dictum,* and for the reason that ''moreover, the conveyance of the timber right has been often held by this court to be a conveyance of the realty. If the timber had not been conveyed at the time of the judgment in this drainage proceeding, the land with the timber on it would have been assessed its due share for the payment of the bonds and the expenses of the proceeding. The owner, having parted with the valuable timber interests, would not be assessed for the same valuation on the land as he would have been before such conveyance. If the valuation assessed against his land was reduced by the value of the conveyance of the timber, of course the owner of such timber right would be assessed for the value of such timber as was standing and uncut at the time the assessment and valuation were made. It is true the conveyance may be called a lease, but it is not a lease in the ordinary sense of a lease of a house or farm which takes nothing from the value of the realty, but it is a conveyance of an interest for years in the land. Till the timber is cut, the land cannot be used for any other purpose, and the gradual cutting of the timber will impair the value of the tract.''

We think the better reason supports the statement of the Chief Justice, *supra,* and that it is in line with the rules announced by our own decisions. It will be noted, moreover, that the facts in the Dover Lumber case, *supra,* are quite different from those of the case at bar. In that case the timber was of a certain size and conveyed before the formation of the drainage district and for a period of only five years, while in this case when the district was formed Mrs. Felger owned the entire estate, and after the improvement had been completed she conveyed to a holding corporation for a period of fifty years all the timber and its growth during that period. It follows from what we have said that the chancellor erred in granting the relief prayed by the intervener. The

decree is therefore reversed, and the cause remanded with directions to dismiss the intervention of appellee, and for further proceedings in accordance with the rules of equity and not inconsistent with this opinion.