## MOSS et al. v. CHAPPELL et al.

1. Even if a defective exception to an auditor's report, filed within twenty days after the report is filed, is not amendable after the expiration of twenty days, the allowance of the amendment is in effect a judgment of the court that the exception is amendable at that time; and as long as this judgment stands unreversed, the exception is to be treated as duly filed.

2. A plaintiff in ejectment may recover upon his prior possession alone against one who acquires possession subsequently by mere entry and without any lawful right whatever.

3. "Ordinarily it is not necessary to anticipate the defense; and where the plaintiff relies on possession, he need not aver that the defendant is a trespasser, but evidence of prior possession alone is sufficient to put defendant on proof that he has a better title than that of plaintiff."

4. "It is a familiar maxim of the law that land can not pass as appurtenant to land."

5. A deed to a railroad company contained the words, "Provided that should said strips of land cease to be used for railroad purposes, it shall revert" to the grantors. Held, that the words quoted created a condition subsequent, a breach of which would work a forfeiture.

6. When a grantee in a deed containing a condition subsequent that when the land shall cease to be used for a given purpose it shall revert, or one claiming under such grantee, divides the land in such a way that a dividing line is clearly established, and devotes one portion of the tract to uses entirely foreign to that purpose, there is a breach of the condition as to the portion so used, and those claiming under him who made the division and recognizing the division thus made can not defeat the right of the grantor to enter, merely upon the ground that the condition in the deed did not provide that the land should revert if it or any portion thereof should cease to be used for the purposes specified. The segregation of the property as against such persons divided the condition.

7. A waiver of a forfeiture resulting from the breach of a condition subsequent in a deed in favor of a named person and for a stated purpose is limited to the terms of the waiver, and does not destroy the condition altogether.

8. The grantor in a deed containing a condition subsequent, upon the breach of such condition, is not revested with the title until there has been an entry. The grantor may enter peaceably if he can, or assert his right to enter by an action for the recovery of the possession of the land against the grantee and those claiming under him.

Argued December 7, 1905,—Decided August 13, 1906.

Exceptions to auditor's report. Before Judge Kimsey. Rabun superior court. July 31, 1905.

In 1882 R. L. Moss and A. K. Childs conveyed to the Northeastern Railroad Company all their interest in the roadbed upon which

was laid the railroad track of the company as it ran through lot 184 in the 13th district of then Habersham, now Rabun county, and "also the strip of land lying between the railroad and public road on the south side of the track from the R. R. crossing east to the eastern line of said lot; also the strip from the main track to ten feet beyond and north of the turntable and the track leading thereto." Following the description of the property were these words: "Provided that should said strips of land cease to be used for railroad purposes, it shall revert to said R. L. Moss and A. K. Childs." In 1887 the Northeastern Railroad Company executed and delivered to William Bailey Thomas a deed to property described as follows: "The Northeastern Railroad from Cornelia to Tallulah Falls, lying and being in the counties of Habersham and Rabun in said State, being about twenty-one miles in length, including the right of way, superstructure, depots, switches, sidetracks, tools, section-cars, buildings, wood for locomotives on hand along the line, water privileges and all appurtenances of said right of way, together with the telegraph-line instruments and other property thereto belonging and appertaining; also the right, privilege, and franchise to operate a railroad between Cornelia and Tallulah Falls aforesaid; also the lots of land adjacent to the depot lot at Clarksville and supposed to contain five or six acres in the aggregate, and the land lot belonging to the said The Northeastern Railroad Company near Tallulah Falls, through which said railroad runs. No other lands owned by said Northeastern Railroad are conveyed." In 1888 Thomas conveyed to the Blue Ridge and Atlantic Railroad property described as follows: "The railroad from Cornelia to Tallulah Falls, lying and being in the counties of Habersham and Rabun, State of Georgia, being about twenty-one miles in length, including the right of way, superstructure, depots, switches, side-tracks, tools, section hand-cars, buildings, water privileges and all the appurtenances of said right of way, and also the right, privilege and franchise to operate said railroad." On December 7, 1891, Thomas executed a mortgage to Chappell to a portion of one of the strips described in the deed from Childs and Moss to the Northeastern Railroad Company. This mortgage appears to have been recorded twice, first on January 5, 1892, and again on April 25, 1893. On March 1, 1892, Thomas executed a mortgage to Hodgson to secure a debt for $1,000 on the same prop-

erty described in the mortgage to Chappell. On this mortgage appears an entry dated May 25, 1892, in the following words: "To the extent of the within mortgage we hereby waive any right of reversion under condition in deed to this property from us to the Northeastern Railroad Company, but no further. Childs and Moss." The property embraced in this mortgage was levied on under a tax execution against Thomas, and Hodgson purchased the same at the tax sale had on March 10, 1894. Hodgson instituted proceedings to foreclose his mortgage, and obtained a judgment foreclosing the mortgage as well as a general judgment against Thomas on March 20, 1893, and execution was issued accordingly. This execution was levied on the property, Childs and Moss being in possession at the time, and at the sale by the sheriff, on May 1, 1894, they became the purchasers, and remained in possession.

Subsequently to this a tender was made to R. L. Moss for the purpose of redeeming the property under the tax sale. This tender was refused. Thereafter Chappell instituted proceedings to foreclose his mortgage, and obtained judgment of foreclosure, the rule nisi being served upon Thomas; and the execution issuing upon this foreclosure was levied upon the property, and at a sale had on the first Tuesday in December, 1896, Chappell became the purchaser for the sum of $100, and the tenant of Childs and Moss was turned out of possession by the sheriff, and a tenant of Chappell placed in possession. Neither Childs nor Moss had any notice of the foreclosure or sale thereunder until the sale had taken place and their tenant had been ejected. Childs and Moss then filed an equitable petition against Chappell and Thomas, and the sheriff of Rabun county, alleging that they were the owners of the property embraced in the mortgage above referred to, that they held title to the same under a chain of title originating in the State, setting forth in substance the facts above referred to. The prayers of the petition were, that the sheriff's deed to Chappell be canceled, that Thomas be decreed to have no further interest in the property, and that they recover possession of the same. By amendment it was alleged that the foreclosure sale at which Chappell became the purchaser was advertised in a paper published in Hall county, instead of in a newspaper published in Rabun county; and also that the debt due by Thomas to Chappell was based upon a gaming consideration, and the mortgage was therefore void. It was also alleged

that the judgment of foreclosure was fraudulent and collusive. Answers were filed by each of the defendants. Hodgson was subsequently made a party. The case was referred to an auditor, who filed a report which in effect amounted to a finding that the plaintiffs were not entitled to recover. Numerous exceptions of law and fact were filed to this report. These exceptions were all overruled, and the report of the auditor was made the judgment of the court. The plaintiffs excepted.

*John J. Strickland* and *R. E. A. Hamby,* for plaintiffs.

*W. S. Paris* and *H. H. Dean,* for defendants.

Совв, P. J. (After stating the foregoing facts.)

1. The first matter for consideration relates to a question of practice. The original exceptions to the auditor's report were filed in due time, but some of them were defective for the reason that they did not embody the evidence necessary to a determination of the questions involved, nor point out where such evidence might be found in the brief of evidence filed by the auditor. After the time fixed by law for the filing of exceptions to the report had expired, a motion was made to amend the exceptions so as to embody therein the evidence material to a decision of the questions raised. The court allowed the exceptions to be amended, and no exception was taken to the order allowing the same. It is now contended by the defendant in error that these exceptions should not be considered, because they did not, as originally filed, comply with the law. It is also contended that some of the exceptions, even as amended, were defective for the reason that the amendment set out certain evidence and recited that the error would appear from the evidence set out and other evidence in the record, and did not specify what other evidence was referred to.

It seems to be an open question whether since the passage of the act of 1894 (Civil Code, § 4589), requiring exceptions to an auditor's report to be filed within twenty days, an exception is amendable after the expiration of twenty days. It has been held that. there is nothing in the section just cited making an exception in favor of a person who is prevented by providential cause from filing his exceptions in the time prescribed. *Littleton* v. *Patton,* 112: *Ga.* 438 (4). In *Fleetwood* v. *Bibb,* 113 *Ga.* 618, the question as to whether exceptions to an auditor's report, which were not sufficiently specific to raise an issue that could be properly referred to

a jury or determined by the court, were amendable, was left open. In *Lane* v. *Ry. Co.*, 96 *Ga.* 630, it was held that it was within the discretion of the court, upon proper cause shown, to extend the time for filing exceptions to an auditor's report beyond the period limited by an order previously passed. It is to be noted that this decision was rendered in a case that was tried before the passage of the act of 1894, and the authorities cited by Mr. Justice Lumpkin to sustain the proposition above referred to, on page 644, all relate to the practice as it existed prior to the adoption of the act of 1894. In *Mohr-Weil Lumber Co.* v. *Russell*, 109 *Ga.* 579, there is a ruling to the effect that it is within the discretion of the court to allow or reject new exceptions to an auditor's report after the time for excepting thereto has passed. The case of *Lane* v. *Ry. Co.*, supra, is cited to sustain this ruling. It is to be noted that Mr. Presiding Justice Lumpkin in the opinion makes no reference to the act of 1894, and the case seems to have been decided upon the practice prevailing before the passage of that act. The case relied on and the cases therein cited all relate to the prior practice. But even if the question is not open so far as the present case is concerned, a judgment has been entered in the trial court allowing the exceptions to be amended, and this judgment is unexcepted to. It necessarily embodies within it a ruling by the trial judge to the effect that the exceptions were amendable, and this is the law of the case so long as the judgment allowing the amendment to the exceptions stands unreversed. *Ga. Nor. Ry. Co.* v. *Hutchins*, 119 *Ga.* 504. If the defendant in error desired to bring the question as to the right to amend the defective exceptions before this court, exceptions pendente lite should have been taken to the order allowing the amendments, and a cross-bill of exceptions should have been filed. There are, however, some exceptions which, even as amended, were defective for the reason that they appeared upon their face to refer to other evidence in the record than that embodied in the amendment, and the place in the record where such other evidence was to be found was not pointed out. This defect was a sufficient reason for the judge to overrule the exceptions; and therefore such exceptions will not be considered. Some of the exceptions as amended raise questions which are properly before this court for decision, and these questions will be dealt with in the discussion which follows.

2, 3. The petition, properly construed, seeks to recover the possession of land, and prays for certain equitable relief deemed necessary to quiet the title in the event of ·a recovery by the plaintiffs. The main purpose of the suit is to recover the possession of land. The equitable relief is ancillary. Rules which would be· applicable in an ordinary action of ejectment would therefore be applicable to that portion of the cause of action which is purely legal. The plaintiff in ejectment may recover against an intruder upon proof of prior possession alone. *Watkins* v. *Nugen,* 118 *Ga.* 375 (2). It is not ordinarily necessary that the plaintiff should anticipate the defense; and where he relies on possession, it is not essential that the petition should contain an averment that the defendant is an intruder, but evidence of prior possession alone suffices to put the defendant on proof that he has a better title than that of the plaintiff. *Horton* v. *Murden,* 117 *Ga.* 73 (6, 7). One who enters upon land under a void deed is an intruder within the meaning of the rule above referred to. *Watkins* v. *Nugen,* 118 *Ga.* 375 (3, 4). If Childs and Moss were in possession at the date of the foreclosure judgment on the Chappell mortgage, as a result of the abandonment or surrender of the premises by Thomas, the sheriff's deed to Chappell was a nullity. The allegations of the petition are sufficient to show prior possession in the plaintiffs, and these averments were supported by proof. The plaintiffs therefore made out a prima facie case, without reference to the validity of the written title also relied on.

4-7. The land in controversy is embraced within one of the strips described in the deed from Childs and Moss to the Railroad Company. Upon this strip is located the depot building of the company at Tallulah Falls. The space occupied by the building does not embrace the entire strip, or even the greater portion thereof. The telegraph line of the railway company was constructed through this strip, and upon it are located three or more telegraph poles. The railway company appropriated a sufficient portion of the strip to erect its depot building and the telegraph line above· referred to. Further than this, no portion of the strip was used for railroad purposes. This was the condition that existed at the time the Northeastern Railroad Company made the conveyance to Thomas. Whether all or a portion of the strip passed to Thomas under this deed depends upon a proper construction of

the terms of that deed. It is conceded that the land in question is not the land referred to in the deed as being near Tallulah Falls. Whether title to the strip or any portion thereof passed to Thomas depends upon the general description of the railroad property in the deed. Under this description the right of way, buildings, and structures thereon, "and all the appurtenances of said right of way," including the telegraph line, passed. The deed distinctly provides that no other land than that therein described is conveyed. The terms of the deed are broad enough to include the depot building and the land upon which it is situated. Therefore so much of the strip as was occupied by the depot building, or was necessary to its proper use and occupancy as a depot building, was conveyed to Thomas. This is true as to so much of the strip as was necessary to the maintenance of the telegraph line of the company. No other portions of the strip are embraced within the description in the deed, unless the word "appurtenances" is broad enough to include the remainder of the strip. It is a familiar maxim of the law that land can not pass as appurtenant to land. A thing corporeal can not properly be appurtenant to a thing corporeal, nor a thing incorporeal to a thing incorporeal. 2 Am. & Eng. Enc. Law (2d ed.), 524, et seq.; Harris v. Elliott, 35 U. S. 25; New Orleans Pac. Ry. v. Parker, 143 U. S. 42; Investment Co. v. Ry. Co., 41 Fed. 378. In Mo. Pac. Ry. Co. v. Maffctt (Mo.), 6 S. W. 600, the rule above referred to is recognized, but the word "appurtenant" was construed to include land, for the reason that it was manifest from the entire instrument that such was the intention of the parties. In addition to this, even if the word "appurtenances" could be properly construed to embrace land, it would embrace only such land as is indispensable to the use and enjoyment of the franchises of the company. It would not include land acquired simply because it may prove useful to the company, or facilitate the discharge of its business. Humphreys v. McKissick, 140 U. S. 314.

It is said, though, that the condition in the deed from Childs and Moss does not provide that if any or a portion of the strip of land is no longer used for railroad purposes, it shall revert, etc. That is, that the condition depends upon the entire strip being no longer used for railroad purposes. If the Northeastern Railroad Company had not parted with its entire railway in the counties named, it may be that that company would be in a position to assert

that this land was acquired for future use of the company, and that it would not lose title to the same merely because it did not devote it to present railroad use. But when a railroad company conveys all its railroad property, and its franchises, and is no longer in a position to operate a railroad of any character, the fact that it failed to convey to the purchaser of its property a strip of land held by it upon condition that it should be used for railroad purposes would indicate an intention to abandon all claim to the property. If the deed from the railroad company to Thomas did not embrace the land in dispute, the omission of the same from the conveyance would under the circumstances amount to a breach of the condition of the deed, and the portion of the strip not conveyed would thereafter be subject to entry by Childs and Moss.

But it is contended that at the date of the deed to Thomas the only use to which the strip had been appropriated was railroad purposes, that is the maintenance of the depot upon one portion and the telegraph line upon another portion, and that there had been up to that time no division of the strip, and it would therefore be impossible to determine how much was needed for the proper maintenance of the depot building. This difficulty is presented by reason of the uncertainty in the evidence as to when the fence was erected which divided the portion upon which the depot was situated from the remaining portion of the strip. If this fence had been erected by the railroad company, and this was the condition of affairs at the date of the deed to Thomas, it would be manifest that there was no intention to convey the remaining portion to Thomas. Even if the evidence could be so construed as to authorize a finding that there had been a division of the strip by the railroad company prior to the deed to Thomas, and that for this reason the portion in controversy did not pass under the deed to Thomas, we do not base our judgment on that ground. If title to the entire strip ever vested in Thomas, of course he held it subject to the condition in the deed of Childs and Moss. If the deed from Thomas to the Blue Ridge and Atlantic Railroad Company did not embrace the portion of the strip now in dispute, this would amount to the abandonment on his part of the right to use it for railroad purposes, and the result would be a breach of the condition in the deed. But the case does not rest on this alone. It is manifest from the evidence that Thomas did not intend to convey

the land in dispute to the Blue Ridge and Atlantic Railroad Company, and that company, so far as the record discloses, had never claimed the property under its deed.

Treating the property as having passed to Thomas, how does the matter stand? After the execution of the deed from the railroad company to Thomas, he went into possession of the entire strip and remained in possession until the date of his deed to the Blue Ridge and Atlantic Railroad Company. Subsequently he erected upon a portion of the strip a residence and other buildings, and used the same for the purposes of a residence while he was the president of the Blue Ridge and Atlantic Railroad Company. There is a fence dividing the depot portion of the lot from the residence portion. When this fence was erected is not disclosed by the record. Whether it was there when Thomas went into possession, or was erected by him, does not distinctly appear. But it is clear from the evidence that the strip was divided by this fence into two portions during the occupancy of Thomas, and that one portion was used for railroad purposes, and the other portion which is now in dispute was not used for railroad purposes in any way, except for the maintenance of the telegraph line over the same. If the strip had never been divided by the fence, and it had been continuously used for no other purpose than the maintenance of the telegraph line and such purposes as were incident to the location of the depot thereon, it might then be permissible for Thomas and those claiming under him to assert that the condition in the deed of Moss and Childs was entire, and there was no breach by a failure to use a portion for railroad purposes. But when Thomas divided the strip, or recognized a division made by others, and segregated that which was used for railroad purposes, and devoted the remaining portion to uses wholly foreign to the purposes expressed in the condition of the deed, and thus subverted the intention of the grantor, neither he nor those claiming under him, who are not using the property for railroad purposes, are in a position to assert that the condition was indivisible. Under any and every view of the case there has been a breach of the condition in the deed of Childs and Moss, and a right of entry has accrued to them.

It is said, though, that Childs and Moss waived the forfeiture resulting from the breach of the condition when they agreed that Thomas might execute a mortgage to Hodgson upon the property,

and that the forfeiture, having been waived for one purpose and
in favor of one person, was waived for all purposes and as to all.
persons.     It must be confessed that this proposition is startling..
But it is supported by the rule laid down in Dumpor's case, 4 Coke,.
119.   In that case the main question was whether a license to a
lessee to alien, given by the lessor where the lease contained a con--
dition that the lessee or his heirs should not alien without such
license, operated as a dispensation only to such lessee, or determined
the whole condition.   It was held that the condition was dis--
charged altogether.     Of course forfeitures resulting from the
breach of a condition may be expressly released, or may be the sub--
ject of a waiver, and a waiver may result from circumstances as
well as express language to that effect.   All this is well settled;·
and where the release or waiver extends to the whole forfeiture, of·
course all benefit to be derived from the forfeiture is gone.   Tiede--
man on Real Property, § 278; 1 Tiffany on Real Property, § 72 et.
seq.; 1 Jones on Real Property, § 696 et seq.; 2 Washburn on Real
Property (6th ed.), § 961 et seq.   The rule in Dumpor's case is.
that a partial release or partial waiver will have the effect to dis--
charge the forfeiture altogether.   This case has been referred to in.
numerous cases in England and America, but it has not always met
with the approval of the courts which cited or referred to it.   In
fact, it has been said that few, if any, courts have ever followed the
rule there laid down, and the case has always been referred to either
to criticise the rule or to show that the case in hand was within an
exception to it.     In Brummell v. McPherson, 14 Ves. Jr. 175,.
Lord Eldon, while holding that the rule did not control the case
under consideration, said: "Though Dumpor's case always struck
me as extraordinary, it is the law of the land at this day."   In Doe
v. Bliss, 4 Taunton, 735, Sir James Mansfield said, "Certainly the
profession has always wondered at Dumpor's case, but it has been
law so many centuries I can not now reverse it."   In Bleecker v.
Smith, 3 Wend. 531, Dumpor's case was cited, but the case in hand
was held not to be within the rule.   This was also true in Dakin v.
Williams, 17 Wend. 449.   Mr. Chief Justice Nelson in the opinion
says that the reasons given for the rule in Dumpor's case seemed
neither satisfactory nor conclusive, but the common-sense view and
the one coinciding with the apparent intent of the parties was that
the license enabled the lessee to alien the premises, leaving the

operation of the condition of the lease in full force upon the assignee. This learned judge also says, "The doctrine appears to be founded upon the idea that the condition can not be apportioned or divided, though I am free to confess I see no practical difficulty in this respect." In the same case in 22 Wend. 201, Chancellor Walworth, in referring to Dumpor's case, says: "That case, as Sir James Mansfield said, in Doe *v.* Bliss, 4 Taunton, 736, the profession has always wondered at; and I presume for the reason that the decision carried a technical principle beyond the bounds of common sense. But although that decision has been so long acquiesced in as a settled rule of law, in the relation to the title to real property which was liable to be forfeited by the breach of a condition subsequent, that it should not now be disturbed, it ought not to be extended to any other class of cases." The court held that the case under consideration was not within the rule. Text-writers of high standing have laid down the rule that a condition subsequent, which if taken advantage of discharges the whole estate, if once dispensed with in whole or in part, is gone forever; for a condition, being an entire thing, can not be apportioned except by the act of the law. 2 Wash. Real Prop. (6th ed.) § 962; 1 Jones, Real Prop. § 707; 1 Tiffany, Real Prop. § 72. It will be found upon investigation that wherever this proposition is laid down either in text-book or decision, the authority for the statement is always traceable to Dumpor's case. In a very able article in 7 Am. Law Rev. 616, Joseph Willard, Esq., reviews all the cases both in England and America in which Dumpor's case was cited, and undertakes to prove that it has not been directly followed in any case either in England or America, and that wherever it has been cited it has either been criticised or distinguished. While he concedes that it is a decision of long standing, he contends that this should not compel modern judges to follow it, for the reason that it has not met with the approval of judges of the present day, nor of those of the centuries past since the rendition of the decision. It occupies in the law the position of an admitted error, and "should receive no greater tolerance merely because it is venerable." It is to be noted that the rule in Dumpor's case has been changed in England by statutes passed in 22 and 23 Vict. c. 25, and 23 and 24 Vict. c. 38. The cases, both English and American, which relate to the rule laid down in Dumpor' case will be found in a note

to Dumpor's case, in 1 Smith's Leading Cases (9th ed.), 119.  See also 1 Leading Cases on American Law of Real Property, 146. The decision in Dumpor's case, having been rendered prior to the date fixed by our adopting statute, is binding upon this court as authority until overruled.  The doctrine of that case, that a condition is not divisible, seems to us to be purely artificial, and not founded upon any sound reason.  Forfeitures are not favored, and the courts will often seize upon slight circumstances to prevent the operation of a forfeiture.  But there seems to be no good reason why one should not be permitted to release or waive a forfeiture as to one person, and assert it as to another.  We think it more consistent with reason and justice that the rule should be that a forfeiture is only waived in behalf of the person for whose benefit the waiver was made, and those who claim under the instrument in which the waiver appears, or the person for whose benefit it was made.  The waiver in favor of Hodgson destroyed the right of entry as against all persons claiming under Hodgson's mortgage, but as to others the right was intact.  When Childs and Moss became the purchasers at the foreclosure sale under the Hodgson mortgage, they simply acquired again that interest which they had allowed to go out of them as a result of the waiver.  Any other right resulting from a breach of the condition in the deed was not affected either by the waiver or the purchase at the foreclosure sale. The sale and purchase by Childs and Moss was in effect merely a cancellation of the mortgage.

A distinction has been drawn between a release of a forfeiture and a waiver of a forfeiture; but it is not material to the present case to enter into a discussion of any distinction that may exist between the two.  Whether the language of the entry signed by Childs and Moss, which appears upon the mortgage given by Thomas to Hodgson, creates a release of the forfeiture or a waiver of the forfeiture, it is evident that it was the intention of the parties that the interest of Childs and Moss in the property was only to be affected to the extent indicated in the mortgage, and that no other interest in the property was released and no other interest waived.  It would indeed be strange if this entry should be allowed to operate in behalf of a stranger who was not in the contemplation of the parties and who has not changed his station on the faith of the entry.  The application of the rule in Dumpor's

case to this transaction would shock the reason and offend common sense. It would give to the transaction between the parties an effect that neither intended or ever contemplated. It would vest Thomas with the fee to the property, when it is manifest that whatever interest he had therein was to be subject to the rights of Childs and Moss to enter upon the property upon the breach of the condition. Childs and Moss by the release or waiver placed themselves in a position where they were estopped from asserting any title to or interest in the property as against Hodgson or any one claiming under him; and if at the foreclosure sale under Hodgson's mortgage persons other than Childs and Moss had become the purchasers, they would have been estopped to assert any right in the property as against such purchasers. But when they became the purchasers themselves, the effect of the sheriff's conveyance to them was simply to place the property so far as every one else was concerned in the same position it was in before they assented to the execution of the mortgage to Hodgson. Whatever interest Thomas had in the property was a consequence of the waiver endorsed on the mortgage. They therefore acquired simply that which had gone out of them as a result of the waiver. When that returned to them they were in the same position as they were before the waiver was made. That is, they had a right to enter upon a breach of the condition. But it is said that the effect of this purchase at the foreclosure sale was to work a merger; and that when Childs and Moss went into possession, and remained in possession after the foreclosure sale, their interest resulting from a breach of the condition was merged into the interest acquired at the foreclosure sale. Even if the doctrine of merger is at all applicable to the present case, we do not think it would have this effect. If there was any merger, the interest of Thomas resulting from the waiver would merge into the greater interest of Childs and Moss resulting from a breach of the condition. But we are not at all clear that the doctrine of merger has any application to the case whatever.

· 8. Upon a breach of a condition subsequent working a forfeiture, the person to whom the estate is limited may enter immediately. Civil Code, § 3141. The grantor in a deed containing such a condition upon its breach may enter peaceably if he can do so, or he may maintain his action for the recovery of the premises in the event the grantee refuse to surrender possession. Such an action

is the equivalent of an entry. 1 Tiffany on Real Property, § 74. Until there has been an entry the grantee or those holding under him are entitled to the possession and are to be treated as the owners. 1 Jones on Real Property, § 711. But they are subject to be evicted by a judgment rendered in a suit by the grantor brought for the purpose of enforcing the forfeiture. *Peacock Co.* v. *Brooks Lumber Co.,* 96 *Ga.* 542; *Georgia R. Co.* v. *Macon,* 86 *Ga.* 586 (3). When Thomas executed a mortgage to Chappell the latter acquired no greater interest in the property than Thomas had, and his interest was simply the right to remain in possession until Childs and Moss saw fit to enforce the forfeiture by entry. Chappell acquired no greater right than this at the foreclosure sale under his mortgage. Even if Thomas acquired any title to the property from the deed from the railroad company, this title was subject to be defeated when the property ceased to be used for railroad purposes; and the moment this condition of affairs arose Childs and Moss had a right to enter, not only as against Thomas but as against any person claiming under him. If Thomas did not acquire title from the railroad company, Chappell acquired no lien under the mortgage given by Thomas, and therefore no interest in the property at the foreclosure sale. If Thomas obtained title under the deed from the railroad company, this title was subject to be defeated when the condition in the deed was broken. The rights of Chappell were inferior to those of Childs and Moss whenever they saw fit to assert their right to enter, which accrued to them as a result of the breach of the condition in the deed, growing out of the fact that Thomas after acquiring title from the railroad company had devoted the land in dispute to other than railroad purposes.

Applying what has been said to the assignments of error contained in the record, it becomes at once apparent that the court erred in overruling several of the exceptions to the auditor's report dealing with questions hereinbefore discussed. As these questions were vital and pivotal, it follows that the court erred in rendering a decree in favor of the defendant.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent, and Atkinson, J., who did not preside.*