Phinis W. SLIGH and Beulah SLIGH
and PINE BLUFF PRODUCTION CREDIT
ASSOCIATION *v.* O. F. PLAIR

77-116                                    569 S.W. 2d 58

Opinion delivered July 10, 1978
(In Banc)

[Rehearing denied September 11, 1978.]

*Robert E. Garner* and *Bridges, Young, Matthews & Davis,* for appellants.

*Paul K. Roberts,* for appellee.

Bill Penix, Special Chief Justice. On February 11, 1932, O. F. Plair and L. J. Plair, his wife, conveyed by warranty deed 53.5 acres of land in Bradley County, Arkansas to their daughter, Beulah Slight and "her bodily heirs". The consideration was $900 to be paid over five years for which a lien was retained. The deed recited:

> . . . the further consideration and condition that the said Beulah Sligh shall live upon the premises herein conveyed and shall not mortgage, sell or in any way alienate the same. Such conditions to be binding upon and to be observed by grantee herein, and in case of any violation or non-observance of the above condition, then this deed shall be null and void and the said premises shall then and there, and wholly and absolutely revert to the gran-

tors herein, their heirs, executors, administrators and assigns, and no act or omission on the part of any of the later shall be a waiver of the enforcement of such conditions. . .

Beulah Sligh and her husband, Phinis W. Sligh lived on the lands until 1941 or 1942 when they moved into the nearby city of Warren. They continued to use the lands for agricultural purposes.

In 1966, Beulah Sligh conveyed one acre of the 53.5 acres to her sister-in-law and husband, Mr. and Mrs. Salter. At that time, O. F. Plair suggested to his daughter, Beulah Sligh, that she not sell anymore of the land. The Slighs mortgaged the 53.5 acres and other lands to First Savings and Loan Association in 1970. They executed a second mortgage in 1972 to Pine Bluff Production Credit Association.

In 1976, when the Slighs were delinquent on their mortgage payments, First Savings filed this action for foreclosure. The Pine Bluff Production Credit Association, having the second mortgage, was named a defendant. In July, 1976, the father, O. F. Plair, filed his intervention contending the two mortgages were breaches of the conditions of the 1932 deed entitling him to retake possession of the property. During the 44 years from execution of the deed to his daughter to his intervention in this action, O. F. Plair lived near Beulah Sligh in Bradley County and they visited. After Plair's intervention, Pine Bluff Production Credit Association amended and made as parties defendant the three children of Beulah and Phinis Sligh, Freddie Charles Sligh, Betty Lou Sligh, and Patricia Powell.

At the trial, Mr. and Mrs. Sligh and their children, Freddie Charles Sligh, Betty Lou Greenwood and Patricia Powell, all stipulated that Pine Bluff Production Credit Association and First Savings could have judgment foreclosing and terminating any interest these parties might claim in the 53.5 acres. First Savings waived any rights against the 53.5 acres.

The Chancellor awarded judgments to the lenders against the Slighs and gave Pine Bluff Production Credit

Association "judgment as against Betty Lou Greenwood, Patricia Powell and Freddie Charles Sligh foreclosing and terminating any interest that [they] may claim in and to the 53.5 acre tract. . . " However, the Court held that Beulah Sligh by the sale or mortgages had committed a forfeiture of a condition subsequent and title to the 53.5 acres thus reverted to O. F. Plair.[1]

Beulah Sligh violated conditions set out in the deed when she moved from the farm to town 34 years before O. F. Plair intervened in this suit. Again, she acted contrary to the terms of the deed when she sold off an acre ten years before the intervention. Her mortgages in 1970 and 1972 also violated the terms of the deed.

The 1932 deed purported to create a fee tail estate with a condition subsequent. O. F. Plair did not declare a breach of condition until 44 years after his deed. This was after other violations of conditions which obviously had been known to him. Regardless of the wording of the deed suggesting that no act or omission on the part of O. F. Plair would be a waiver of enforcement of the conditions, this Court will not allow a reverter to O. F. Plair. Conditions subsequent are not favored and are to be construed most strongly against the grantor to prevent a forfeiture. See cases collected at 26 C.J.S., *Deeds*, § 141 et seq.; 28 Am. Jur. 2d, *Estates*, § 166 et seq.; Annot., 39 A.L.R. 2d 1168.

The Arkansas Supreme Court has long held that ". . . slight circumstances will often be seized upon to prevent such forfeiture." *Jeffries* v. *State for Use of Woodruff County*, 216 Ark. 657, 226 S.W. 2d 810 (1950). This Court has further noted that:

> Any conduct on the part of the party having the right to declare a forfeiture which is calculated to induce the other party to believe that the forfeiture is not to be insisted on will be treated as a waiver.

---

[1] The sister-in-law and husband, Mr. and Mrs. Salter, who were deeded one acre of the 53.5 acre tract by Beulah Sligh in 1966, were not parties to this action.

*Kampman* v. *Kampman*, 98 Ark. 328, 135 S.W. 905 (1911). See also *Terry* v. *Taylor*, 143 Ark. 208, 220 S.W. 42 (1920); *Bain* v. *Parker*, 77 Ark. 168, 90 S.W. 1000 (1905). The Court here holds that O. F. Plair did not exercise, but waived, any right of re-entry he might have had. No forfeiture will be ordered where, as here, the deed anticipated more than one condition subsequent and the grantor failed to act within a reasonable time after he could have asserted a forfeiture.

Pine Bluff Production Credit Association is entitled to a foreclosure decree of the interest of Beulah Sligh in the 53.5 acres, less the one acre deeded to Mr. and Mrs. Salter. The Sligh's three children, Freddie Charles Sligh, Betty Lou Greenwood and Patricia Powell having stipulated in open court that Pine Bluff Production Credit Association have judgment foreclosing and terminating any interest they might have in the 53.5 acres, are estopped from asserting any personal interest in the lands in the future. However, the 1932 deed to Beulah Sligh created a fee tail and vested only a life estate in her with a contingent remainder in the heirs of her body. Such remainder interest will not vest until the death of Beulah Sligh. It is possible, but not certain, that such interest will vest in the three children at the death of Beulah Sligh. If one of the three children should predecease Beulah Sligh, then a portion of the contingent remainder could vest in grandchildren who would not be estopped against Pine Bluff Production Credit Association. Ark. Stat. Ann. § 50-405 (Repl. 1971); *Fletcher* v. *Hurdle*, 259 Ark. 640, 536 S.W. 2d 109 (1976).[2]

The lower court is reversed and this case is remanded to the Chancery Court of Bradley County with directions to enter a decree in conformity with this decision.

Special Justice JOHN F. STROUD, JR., joins in the opinion. FOGLEMAN and BYRD, JJ., dissent. HARRIS, C.J., and HOLT, J., not participating.

---

[2]We take note of Ark. Stat. Ann. § 50-405.1 (Repl. 1971), which purports to set up a provision for the dissolution of an estate tail by joint undertaking of the grantor, all life tenants and all contingent remaindermen signing. This statute would not apply to the facts above.

JOHN A. FOGLEMAN, Justice, dissenting. The petition of the intervenor-appellee Plair was granted by the chancery court and title to the disputed land vested in him. Plair's intervention alleged that he had previously had no information that Beulah Sligh had mortgaged the land conveyed by Plair to his daughter Beulah and her bodily heirs. There is evidence to sustain this allegation which the chancellor obviously believed. It is not contradicted. The majority ignores this fact. This fact necessarily had a significant bearing on the trial court's holding, since appellant Pine Bluff Production Credit Association pleaded waiver and estoppel. It should not be ignored. It was not clearly against the preponderance of the evidence. It is also significant that the Slighs did not plead waiver or estoppel — and for good reason, apparently. No issue was raised in the trial court on the question as between Plair and the Slighs. Even so, the Slighs are included in the notice of appeal and listed as appellants without ever having filed a pleading in response to Plair's intervention.

In order to reverse the chancellor the majority must say that the chancery court's finding of fact was clearly against the preponderance of the evidence. He specifically found that the "waiver, if any, . . . cannot adhere to the benefit of Pine Bluff Credit Association." Questions of waiver and estoppel are almost invariably questions of fact based upon conduct of a party. *Lawyers Trust Co.* v. *City of Houston,* 359 S.W. 2d 887 (Tex., 1962). When they are not purely questions of fact, they are usually mixed questions of law and fact. In considering such questions, the conduct shown should be carefully inspected and all the evidence on the subject impartially scrutinized. *Ray Dodge, Inc.* v. *Moore,* 251 Ark. 1036, 479 S.W. 2d 518; *Sirmon* v. *Roberts,* 209 Ark. 586, 191 S.W. 2d 824. It must also be remembered that the burden of proving waiver, and all its essential elements rested upon Pine Bluff Production Credit Association. *Planters Mut. Ins. Co.* v. *Loyd,* 67 Ark. 584, 56 S.W. 44, 77 Am. St. Rep. 136; *Hartford Fire Ins. Co.* v. *Enoch,* 72 Ark. 47, 77 S.W. 899. A careful scrutiny of the evidence in the light of the law of waiver tends to sustain the chancellor. I do not see how such a scrutiny can be said to show that he held contrary to the preponderance of the evidence.

Waiver is the voluntary and intentional relinquishment or abandonment of a *known* right. *Ray Dodge, Inc.* v. *Moore,* supra; *Keith* v. *City of Cave Springs,* 233 Ark. 363, 344 S.W. 2d 591; *First National Bank of Mineral Springs* v. *Hayes-McKean Hardware Co.,* 178 Ark. 429, 10 S.W. 2d 866; *Sovereign Camp, Woodmen of the World* v. *Newsom,* 142 Ark. 132, 219 S.W. 759, 14 ALR 903; 28 Am. Jur. 2d 842, Estoppel and Waiver, § 158. Doing something inconsistent with the right or with its possessor's intention to rely on it, with *full knowledge of the material facts* may constitute waiver. *Ray Dodge, Inc.* v. *Moore,* supra; *Sirmon* v. *Roberts,* supra; *Sovereign Camp, Woodmen of the World* v. *Newsom,* supra. See also, *Phoenix Ins. Co.* v. *Flemming,* 65 Ark. 54, 44 S.W. 464, 39 LRA 789, 67 Am. St. Rep. 900. If Plair did not know that the Slighs had mortgaged the land, he cannot be said to have known of his right to declare a forfeiture on that ground. The burden of proof of Plair's knowledge was on Pine Bluff Production Credit Association. *Phoenix Fire Ins. Co.* v. *Flemming,* supra. He certainly is not charged with knowledge of the recording of mortgages subsequent to his conveyance to his daughter. Since they were not in his line of title, he was not required to look for them. *Turman* v. *Sanford,* 69 Ark. 95, 61 S.W. 167; *Singer* v. *Nolon,* 99 Ark. 446, 138 S.W. 958; *Rozzell* v. *Chicago Mill & Lumber Co.,* 76 Ark. 525, 89 S.W. 469. His waiver must be found in other conduct.

There is no evidence that the property was ever mortgaged prior to 1970, and no evidence that Plair knew of any mortgage until he learned of this foreclosure suit shortly before he asked permission to intervene. Mrs. Sligh testified that she did not tell her father when the 1970 mortgage was given to First Savings and Loan Association. There is not one word of evidence that Plair had ever waived the condition that Beulah Sligh "shall not mortgage . . . same." The conditions are not interdependent. The majority, without citation of authority, somewhat ambiguously states that "[n]o forfeiture will be ordered, where, as here, the deed anticipated more than one condition subsequent and the grantor failed to act within a reasonable time after he could have acted." Why not? I suppose the majority means that Plair was required to act within a reasonable time after Beulah sold one acre "about 1966," or perhaps when the Slighs started living in Warren in 1942. But if a condition subse-

quent is continuing in character, contemplating the continual refraining from doing certain acts, the waiver is operative only on past breaches. 28 Am. Jur. 2d 297, Estates, § 168; Annot. 11 LRA (n.s.) 398, 404.

The majority's quoted statement is clearly contrary to Arkansas law. Waiver of one ground of forfeiture, of which the party having the right to declare a forfeiture has knowledge, does not constitute a waiver of another ground of forfeiture of which he has no knowledge. *National Life & Accident Ins. Co. v. Davison*, 187 Ark. 153, 58 S.W. 2d 691; *Planters Mutual Ins. Co. v. Loyd*, supra.

As recognized in the cases cited, there may be a waiver of a condition in part but not otherwise. Annot. 39 ALR 2d 1116, 1132. And the waiver of a forfeiture resulting from the breach of a condition subsequent in favor of a named person and for a stated purpose is limited to the terms of the waiver, and does not destroy the condition altogether. *Moss v. Chappell*, 126 Ga. 196, 54 S.E. 968, 11 LRA (n.s.) 398 (1906).

Obviously the condition that Beulah Sligh "shall live upon the premises" is wholly unrelated to the condition that she "shall not mortgage, sell or in any way alienate same." But the majority says that a waiver of one condition is a waiver of all. Why? Again the majority's statement is contrary to Arkansas law. The waiver of one condition is not waiver of another. *Hartford Fire Ins. Co. v. Enoch*, supra.

Although the Slighs did not live on the property, the evidence showed that Plair intended that they have a home there; they built a house there, which was always occupied either by someone working on the land or by one renting the house; they truck farmed the land, raised cotton or had a chicken operation on the land up until the present; they still maintain the property and it is in "tolerable fair condition." Beulah Sligh said that after she and her husband moved off the farm they used the land "just like we had always done" except for renting the house to various people. The father said he felt they were still using the home and taking care of their stock. Why was it a waiver of a condition against mortgaging the property for the father to be satisfied with this arrange-

ment to the extent that there was no forfeiture against his daughter?

The one acre sale is even less basis for finding waiver. It was a sale to Beulah Sligh's sister-in-law. Beulah Sligh testified that she sold the property to the Salters because they wanted to retire and "they were in the family." When this was done, Plair told his daughter, according to her, "I don't want you to sell any more of it off." The father said he told her: "Don't you sell any more." The daughter said she told him she had no intention to do so. Why is this sale of one acre to a relative a waiver of the condition that the property not be mortgaged? In the very next section to that cited by the majority from 28 Am. Jur. 2d, Estates, I find in § 167, p. 295, this appropriate and applicable language:

> A mere indulgence is never to be construed into a waiver of a breach of condition. ***** and mere silence or delay is not sufficient to establish such a waiver, especially since the grantor may not have been aware of the breach. *****

Plair's indulgence of his daughter's leaving her dwelling house on the land, accompanied by its maintenance in liveable condition, so she could return to it, of her cutting timber, which probably made the property more desirable for the uses to which it was put and his indulgence when less than 2% of the total acreage was sold to a member of her family, certainly should not be considered as a waiver of future breaches, particularly when the father made it quite clear to the daughter that he would tolerate no more sales. It is a particularly weak and insubstantial basis for overturning the trial court's holding.

The majority has actually failed to make the important distinction as to the difference between waiver of a breach and waiver of a condition. The most vital inquiry is whether the condition itself was waived or whether given breaches were waived. 28 Am. Jur. 2d 296, Estates, § 168; Annot. 39 ALR 2d 1116, 1131; *Moss* v. *Chappell,* supra. If the condition was not waived (and admittedly Plair made it quite clear to his daughter that he was not waiving the condition, even though he waived a breach), waiver of a breach is not to be

construed as a waiver of all right to future performance. 28 Am. Jur. 2d 296, § 168. See *Kampman* v. *Kampman,* 98 Ark. 328, 135 S.W. 905; *Moss* v. *Chappell,* supra.

The greatest flaw in the majority's conclusion, however, is the writing off of the clear language of the deed. The words "and no act or omission on the part of any of the latter shall be a waiver of the enforcement of such conditions" are un-ambiguous. The majority writes these words out of the deed by saying, "Regardless of the wording . . . this court will not allow a reverter to O. F. Plair." Again the statement is without citation of authority, and again, I ask "Why?"

This clause was deliberately inserted to prevent any attempted application of the much criticized rule in Dum-por's case, (4 Coke, 1196), i.e., that, where the condition is negative, i.e., that a *lessee* will not do a particular act without license from the *lessor,* if license be once granted, the condition is gone, and the estate discharged of it. See discussion in An-not., 11 LRA (n.s.) 398. Even in the absence of such a clause, a waiver of past breaches of a condition cannot be construed into a waiver of all rights to future observance and perform-ance. *Ritchie* v. *Kansas N & D Rwy. Co.,* 55 Kan. 36, 39 P. 718 (1895); *Rumford Falls Power Co.* v. *Waishwill,* 128 Me. 320, 147 A. 343 (1929). This principle was clearly and specifically recognized in *Kampman* v. *Kampman,* supra, cited in the ma-jority opinion. The holding in the Maine case just cited is particularly applicable here, and is well stated in a headnote which reads:

> Under deed containing condition subsequent providing for forfeiture of estate conveyed, if grantee shall erect or maintain within twenty-five years any building on lot conveyed, except dwelling house suitable for not more than two families, where grantee erected dwelling house suitable for three families without con-sent and objection by grantor, and later moved another dwelling on lot against grantor's objections, grantor was entitled to forfeiture.

Waiver is more readily found in the actions of insurance companies than in any other case. But even then, the validity of such a non-waiver agreement as that which appeared in

this deed is recognized. This does not mean that a non-waiver agreement cannot itself be waived, but, in order to effect a waiver, there must be conduct amounting to an estoppel. *Queen of Arkansas Ins. Co.* v. *Forlines,* 94 Ark. 227, 126 Ark. 719. A clear statement of the rule in respect to insurance companies is found at 39 C.J.S. 675, Insurance 704a, viz:

> *Nonwaiver clauses.* Stipulations in the policy that the conditions thereof shall not be waived by certain acts may be altered or waived by subsequent contracts or may be waived by acts and conduct amounting to an estoppel, but, in the absence of such a waiver, are valid and operative.

We have said that, in order to be binding, a waiver must operate either by estoppel or be based upon some consideration. *Continental Ins. Co.* v. *Stanley,* 263 Ark. 638, 569 S.W. 2d 653; *Lawrence County* v. *Stewart Bros.,* 72 Ark. 525, 81 S.W. 1059. While it has been said that waiver need not be based upon a technical estoppel, we have said that a correct statement of the law is that when there is no express waiver, it is recognized in all cases where the question is presented that the elements of estoppel exist. *Phoenix Ins. Co.* v. *Flemming,* supra. This requires a showing of a change in position in reliance upon the conduct alleged to be the basis of an estoppel. *Christmas* v. *Raley,* 260 Ark. 150, 539 S.W. 2d 405.

The chancellor correctly held that waiver by Plair, *if any,* did not inure to the benefit of Pine Bluff Production Credit Association, the only appellant having any right of appeal. ". . . [T]he party claiming the waiver must show that he relied upon . . . conduct [of the party having the right to insist on a forfeiture] or that he was misled to his injury, or that he changed his position to his damage or that he paid a consideration for the waiver." *Beene* v. *Green,* 127 Ark. 119, 191 S.W. 915. See also, 28 Am. Jur. 2d 295, Estates, § 167.

The question whether waiver is to be found depends upon the effect of the conduct of the party against whom it is asserted upon the other party. 28 Am. Jur. 2d 843, Estoppel and Waiver, § 158. See also, *Moss* v. *Chappell,* supra. There is not one word of testimony to even suggest that Pine Bluff Production Credit Association ever knew of, much less relied

upon, any conduct of Plair, in taking the mortgage from the Slighs or in making the loan it secured. And it was charged with notice of the conditions of the conveyance to Mrs. Sligh.

I would affirm the decree.

I am authorized to state that Mr. Justice BYRD joins in this opinion.