Harry H. SMEDLEY, Appellee,

v.

CITY OF WALDRON, Appellant,

Thomas Sawyer, Mayor
Waldron, Arkansas.

No. 84–2571.

United States Court of Appeals,
Eighth Circuit.

Submitted April 8, 1985.

Decided Oct. 2, 1985.

David L. Rush, Paris, Ark., for appellant.

John R. Beasley, Ft. Smith, Ark., for appellee.

Before ROSS and JOHN R. GIBSON, Circuit Judges, and MEREDITH,* District Judge.

ROSS, Circuit Judge.

This case is before our court for a second time.[1] The City of Waldron is now appealing a finding by the district court that Smedley is entitled to the remedy of forfeiture of the reservoir in question. On appeal, the City is alleging that the district court erred in concluding that forfeiture of the reservoir was required, because the oil and gas lease executed by the City did not violate either the purpose or intent of the 1940 agreement between Hannah Smedley and the City. We affirm the district court.

In *Smedley I* we remanded to the district court with directions to make findings of

---

* The HONORABLE JAMES H. MEREDITH, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

1. Our first opinion can be found at *Smedley v. City of Waldron*, 739 F.2d 399 (8th Cir.1984). The relevant facts are contained therein and will not be repeated at length in this opinion.

fact on (1) "whether the mineral lease is a violation of the parties' agreement," (2) "whether the donor intended that the city would lose the land only if the land was not used for a reservoir," and (3) whether the donor's intent would be best fulfilled by awarding the revenues from the lease or by invoking the extreme remedy of forfeiture.

■ Our review is limited to whether the factual findings of the district court are clearly erroneous, FED.R.CIV.P. 52(a). We must be left, after a review of the record, with the definite and firm conviction that a mistake has been committed. *Pullman-Standard v. Swint*, 456 U.S. 273, 284 n. 14, 102 S.Ct. 1781, 1788 n. 14, 72 L.Ed.2d 66 (1982) (quoting *United States v. Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *Hoefelman v. Conservation Commission of Missouri*, 718 F.2d 281, 285 (8th Cir.1983). The burden lies with the City of Waldron to demonstrate error under Rule 52. *Reilly v. United States*, 513 F.2d 147, 150 n. 2 (8th Cir.1975). We note that the second and third questions which were the subject of our remand were clearly factual questions.

On remand the parties agreed that the parol evidence rule applied to the agreement between Hannah Smedley and the City. The district court, based on the fact that the parties had no additional evidence to offer, relied solely on the governing agreement. The district court found, with regard to the issue of violation of the agreement, that the City violated paragraph 5 [2] when it leased an interest in the land to the Texas Oil and Gas Corporation. Under Arkansas law, "land" includes everything that lies beneath the surface. *Lewis v. Delinquent Lands*, 182 Ark. 838, 33 S.W.2d 379, 381 (1930). Thus, the district court found that the mineral lease was a clear violation of the agreement.

Secondly, paragraph 5 states that reversion to Hannah Smedley and her heirs would occur if that paragraph was violated. Furthermore, found the district court, paragraph 7 provides that "in the event *any* of these *conditions* numbered 1–7 are broken," the deed is to become "null and void, and the lands shall revert to Hannah Smedley and heirs * * *." Consequently, the district court found this language to create a fee simple subject to a condition subsequent, and once the condition occurred, the City's title ceased and the lands reverted back to Hannah Smedley and her heirs.

As to the issue of what was the best means of fulfilling the donor's intent, the district court again had only the document to aid in this endeavor. The agreement, states the district court, offers no alternative to reversion. Thus, concluded the court, the extreme remedy of forfeiture would best effectuate the donor's intent.

■ Because these factual findings are not clearly erroneous, and no error of law appears, we affirm the district court.[3]

JOHN R. GIBSON, Circuit Judge, dissenting.

I cannot agree that the district court's order contains what are essentially findings of fact, and that our review is governed by the clearly erroneous standard contained in Rule 52 Fed.R.Civ.P., recently expanded upon in *Anderson v. Bessemer City*, —— U.S. ——, ——, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). On remand to the district court for further action, *Smedley v. City of Waldron*, No. 83–222 (8th Cir. May 14, 1983), the parties were given an opportunity to present further evidence of Hanna Smedley's intent in entering this agreement. They confessed that, given the intervening period of forty years since the agreement, they had no further evidence to offer on intent. The district court then attempted to determine the grantor's intent

2. The clause in question states:

The City of Waldron shall never sell, transfer, convey, lease, rent or otherwise dispose of the lands herein above described to other persons, firms, groups and/or corporations, except successors and/or assigns of itself, and if

it attempts to do so, the lands immediately revert to Hannah Smedley and her heirs[.]

3. We note that the City does have a right to reacquire the reservoir in a condemnation proceeding. ARK. CONST. art. 2, § 22; ARK.STAT. § 35–902.

from the written documents. This is no more than courts are called upon to do every day in construing contracts. Thus, this court may itself examine the documents and attempt to determine the donor's intent without the restraints of *Anderson v. Bessemer City.*

I disagree with the district court's holding regarding Hanna Smedley's intent for the following reasons. First, by focusing its analysis solely on paragraph five of the agreement, the court neglected to examine the four corners of the document in its entirety. Given the sparsity of extraneous information from which to determine the donor's intent, an examination of the entire document is particularly necessary in this case. Second, the district court failed to consider the severability of mineral rights from the surface of the land. When these two factors are included in the analysis, the court's conclusion that a complete forfeiture is required in this case is not compelling.

The law abhors a forfeiture, and a condition involving a forfeiture will be strictly interpreted in favor of the interest of the holder of the estate. *Bornholdt v. Southern Pacific Company,* 327 F.2d 18, 20 (9th Cir.1964); *Sligh v. Plair,* 263 Ark. 936, 569 S.W.2d 58, 60 (1978). Arkansas law, like the law in most states, requires the court to look to the entire document in attempting to construe the donor's intent in a deed or instrument conveying a property interest. *Gibson v. Pickett,* 256 Ark. 1035, 512 S.W.2d 532 (1974). Thus, the Smedley-City of Waldron agreement should not be read to authorize a complete forfeiture in the absence of clear evidence, derived from a reading which harmonizes the entire document, that the donor intended that result.

Six of the seven numbered paragraphs of the document deal explicitly with the use of the property conveyed to the City of Waldron.[1] Paragraph 1 requires that the city reconvey the donated lands to the Smedleys if it fails to commence building a dam within two years of the agreement. Paragraph 2 requires that the city reconvey the property to the Smedleys if it abandons the dam. Paragraph 4 requires that the city fence and generally maintain the lake formed by the dam. Paragraph 6 and a portion of Paragraph 3 reserves to the Smedley family the right to fish or boat on the lake created by the dam and access to a specified quantity of water for personal use free of charge. The remainder of paragraph 3 and paragraph 7 deals with additional uses of the conveyed property. Paragraph 3 gives the donor and her heirs a role in determining whether to allow public fishing and boating on the dam, as well as in determining how much to charge for this usage. Paragraph 7 takes the form of a restrictive covenant prohibiting conveyance of any interest in the donated property leading to a use which competed with the interest of the donor, her husband or their heirs.

Within this framework of use restrictions Paragraph 5 prohibits any sale, transfer, conveyance, lease, rent or other "disposal of the land." The clause can be read, consistent with the other paragraphs, as requiring that the city itself maintain, operate, and control the reservoir built on the donated property. Thus, any transfer of ownership rights in the property which resulted in a third person taking control of the reservoir would trigger a forfeiture.

It is far from clear that the donor intended that the conveyance of an interest in the land which did not conflict with its use as a reservoir should activate the forfeiture clause. The parties' agreement clearly recognized the possibility of additional uses for the property which did not conflict with its use as a reservoir. In fact, the donor explicitly identified the consistent additional uses which she intended to preclude or modify. Thus, she reserved a right to participate in planning whether the property is used for public boating or fishing. In addition, she vetoed any use of the property which competed with her interests or the interests of her husband or heirs. Evidently, these uses do not constitute the uni-

---

1. Text of Contract.

verse of consistent additional uses for the donated property. Under Arkansas law restrictions on the use of land is disfavored and will be given effect only if they are clearly established. *Harbour v. Northwest Land Co.*, 284 Ark. 286, 681 S.W.2d 384, 385 (1984); *Sherman v. Haynes*, 248 Ark. 255, 451 S.W.2d 445, 448 (1970). This court, therefore, should not expand the category of use restrictions in this case in the absence of more explicit language in the agreement.

Finally, I am convinced that the district court's analysis excluded an important factor—the severability of mineral rights from land surface. The Arkansas Supreme Court has endorsed the view that mineral rights are severable and capable of separate conveyance. *Bodcaw Lumber Co. v. Good*, 160 Ark. 48, 254 S.W. 345 (1923). The court reasoned as follows:

> There has been a wealth of discussion on the subject whether or not there can be a severance of the surface and mineral rights in land so as to uphold a sale or reservation of the latter, and there is not entire harmony in this discussion; but it appears to us to be in accordance with the great weight of authority to say that there may be such separation and that mineral rights, even those including gas, a volatile substance and generally referred to as being of a vagrant character and liable to escape, may be the subject-matter of a separate sale or reservation so as to create or reserve a right in perpetuity.

*Bodcaw Lumber Co. v. Good*, 254 S.W. 345, 346 (1923).

Under these principles, when the City of Waldron entered into the lease of the mineral rights it severed these rights from its ownership of the surface of the land. The lease in issue in this case contains language consistent with the conclusion that the parties intended a severance. The lease provides that the land is let "for the purpose of ... producing oil and gas and other hydrocarbons." Perhaps more telling is the clause in the lease which imposes on Texas Oil and Gas "full responsibility and liability for damage or loss to the water supply of the Old Waldron City Lake ... directly connected with ... drilling operations."

Applying the *Bodcaw* rule, it becomes clear that total forfeiture is not the sole option available under the circumstances of this case. Even if the court concludes that any lease of the property results in a forfeiture, it does not automatically follow that a partial departure from the terms of the agreement compels a total forfeiture of the city's interest. The law is clearly settled that where there are viable alternative constructions of an agreement involving forfeiture, whether in a general contract or in an agreement conveying a property interest, the construction which avoids forfeiture must be made if at all possible. *Bornholdt v. Southern Pacific Company*, 327 F.2d at 20; *United States Fidelity and Guaranty Company v. Winkler*, 351 F.2d 685, 687 (8th Cir.1965). The *Bodcaw* principle provides an alternative to total forfeiture because it enables us to analyze the status of the mineral interest separate from that of the surface interests.

When the above principles are applied to this case, the net result of the City of Waldron's severance of the oil and gas interest is a partial reversion of the property in question. The mineral rights which had been leased would revert to Hanna Smedley. This would create in Harry Smedley the right to the income on this lease, and ownership of the mineral rights from the time they were leased.

The court's decision today works a paradoxical result. The one clear intent behind Hanna Smedley's donation was to provide a city owned, maintained, and operated reservoir facility. Divesting the city of the reservoir which it has built and maintained with public funds, in a manner consistent with the donor's specifications, clearly defeats this intent. The court's caveat that the city may repurchase the reservoir through use of its eminent domain powers provides small consolation. This unjust result is compelled neither by Arkansas law as demonstrated in *Bodcaw*, nor by the

language of the agreement between the parties.

I am not convinced that more than a partial forfeiture resulted when the City of Waldron executed the oil and gas lease. I would leave the surface rights with the City of Waldron and allow Harry Smedley to have only the mineral rights conveyed in the lease.